12    67
69h 419
12b   67
41ap331
12b   67
50ad188

George Lovett, *respondent, vs.* The German Reformed Church, *appellant.*

The German Reformed Church *vs.* George Lovett.

Corporations that have permitted particular individuals to take possession of their property, their seal and their records; to act as their trustees; and have in fact held them out to the world as their trustees, and as authorized to act for them, are, as much as an individual would be, estopped from questioning the acts of their agents within the scope of their apparent authority.

And, as trustees, it is within the scope of the authority of such persons to apply to the chancellor for permission to mortgage the property; and to defend, or omit to defend, suits brought against the corporation; being responsible, like all other agents, for breach of trust, although third parties, not colluding with them, would not be affected thereby.

In a controversy between two sets of persons claiming to be trustees of a corporation, the court of chancery had authority to appoint one set, trustees in the place of the other, and to vest them with the trust property; and upon several considerations, their acts, whilst such trustees, in relation to third parties, should be sustained.

Such persons, appointed by a court of competent jurisdiction, are trustees *de facto,* and their acts which concern third persons paying valuable consideration for them, are good. They can bring suits for the trust property against third persons, and no one will be permitted, collaterally, to question their title.

The restitution to which a party is entitled upon the reversal of an erroneous judgment, is not restitution to every thing which he has lost in consequence of the erroneous judgment. He recovers what is still in possession of his adversary, but not every thing else. Collateral things *executed* under authority of an erroneous judgment, will not be divested by its reversal; but collateral things *executory* are, after reversal, as if no judgment had ever been.

Lovett *v.* The German Reformed Church.

The plaintiff, in a bill for the foreclosure of a mortgage, stated that no proceedings had been had at law to recover the amount due on the bond and mortgage; the defendants pleaded a judgment which the plaintiff held against them, as being for part of the debt secured by the bond and mortgage in suit, and the testimony sustained the plea. *Held,* that it was a fatal objection to the bill in its then present shape, and on that ground alone the bill was dismissed; with liberty, however, to the plaintiff to amend, if he had exhausted his remedy at law, upon his judgment.

The supreme court, in equity cases which originated in the former court of chancery, is still the same court, although administered by other officers. It will not depart from its own adjudications: and where, in any such cases, a question has been settled by the chancellor, such question, in the supreme court, is *res adjudicata.*

G. and his associates brought a suit in the court of chancery against M. and his associates, claiming that the latter, as trustees of the German Reformed Church in the city of New-York, had committed a breach of trust, in applying the property of the corporation to the promulgation and support of religious doctrines other than those for whose support the property was given; and claiming that the property should be delivered to the complainants, and the defendants be removed as trustees. The chancellor made a decree, declaring G. and his associates to be the rightful trustees, and directing M. and his associates to deliver to the complainants all the property, &c. of the corporation. In obedience to this decree M. and his associates did deliver to G. and his associates the possession of the real and personal estate, and of the books, common seal, title deeds, and other papers of the corporation; and G. and his associates soon afterwards applied to the chancellor and obtained an order authorizing them to mortgage a part of such real estate, and in pursuance thereof they did mortgage the same, and also confessed a judgment to the mortgagee as an additional security for a part of the mortgage money. After the execution of the mortgage, and the confession of the judgment, M. and his associates appealed from the decree of the chancellor to the court for the correction of errors, who reversed the decree of the chancellor, and ordered that M. and his associates be restored to all things which they had lost thereby; and that G. and his associates deliver up the property in controversy to M. and his associates. G. and his associates handed over every thing after the decision of the court of errors; but did not pay over any part of the money raised upon the mortgage. Upon a bill filed by the mortgagee to foreclose; *It was held,* that G. and his associates, at the time of the execution of the mortgage, were the trustees *de facto* of the corporation, and that the mortgage was a valid lien.

In Equity. George Lovett, the plaintiff in the first above entitled suit, filed his bill against the corporation of the German Reformed Church, to foreclose a mortgage executed by Henry

Gable and John H. Wiegand, individuals connected with the *Dutch* Church, calling themselves chairman and secretary of the board of trustees of the *German* Reformed Church, and who were at that time in possession of the church property, under a decree of the chancellor, but which was subsequently reversed by the court for the correction of errors. In 1839 Gable and five others, claiming to be the trustees of the *German* Reformed Church, filed a bill against Jacob F. Miller and five other members of the legitimate board, by name, and without making the corporation a party to the suit, for the delivery to them of the property, &c. of the *German* Reformed Church. This bill was dismissed by Hoffman, assistant vice chancellor of the first circuit, on the 19th December, 1842; (2 *Denio*, 509, 510;) but his decree having been reversed by the chancellor on the 7th May, 1844, (10 *Paige*, 627,) the property was delivered, in consequence thereof, to Gable and his associates, on the 23d May, 1844.

On the evening of that day all the trustees and members of the consistory, who claimed that Jacob F. Miller and his associates were the legitimate trustees of the German Reformed Church, had a conference meeting; at which they passed a resolution that they considered the decree of the chancellor unjust, and that they would appeal to the court of errors. On the 28th of the same month, that part of the congregation which recognized Miller and his associates as the lawful trustees, had a meeting, and then resolved to appeal; and on the 12th of June, 1844, the appeal to the court for the correction of errors, from the decree of the chancellor, was brought; but previously, on the 28th of May, 1844, Gable, as chairman of the board of trustees of the German Reformed Church, in their name presented a petition to the chancellor, praying to be allowed to mortgage the premises therein described, for the sum of five thousand dollars; alledging that they were indebted to the amount of four thousand dollars, for money borrowed to defray the expenses of the suits in which they had been involved to establish their claim to the property belonging to the said church; and that there were sundry other debts due by the petitioners; counsel fees in

said suits; interest on a bond to one *Wittman*, and taxes and assessments; and they further alledged that the church, and the houses belonging to the church, needed repairs to preserve them in good order and tenantable condition. On the same day an order was granted by the chancellor, allowing them to mortgage the premises pursuant to the prayer of the petition. They executed a bond bearing date the 27th day of May, 1844, to George Lovett, in the penal sum of $10,000, conditioned for the payment of $5000, in one year, with lawful interest, payable semi-annually, together with a mortgage bearing even date therewith, to secure the payment of the bond according to its condition.

On the 12th of June, 1844, the trustees, represented by Miller and his associates, appealed from the decree of the chancellor to the court for the correction of errors; and that court, on the 31st day of December, 1845, affirmed the decree of the assistant vice chancellor of the first circuit, and reversed the decree of the chancellor, with costs; and decreed that the appellants be restored to all things which they had lost thereby. And it being suggested that the respondents had taken possession of the property in controversy; since the decree of the chancellor, it was further decreed that the said respondents should deliver up the property to the appellants, who should be at liberty to apply to the chancellor for such further direction as might be necessary: and that the proceedings should be remitted to the court of chancery, with directions to file the same *nunc pro tunc* as of the 7th day of August, 1844; which was accordingly done, pursuant to an order of the chancellor for that purpose, as of that date. After the appeal was brought, Gable and Wiegand, as chairman and secretary of the board of trustees of the German Reformed Church, employed an attorney to confess a judgment of $2000 of debt, and $24,73 costs, in the New-York common pleas, in favor of George Lovett, on the 18th day of June, 1844. This was intended as an additional security for a part of the consideration of the mortgage to Lovett.

On the 18th June, 1848, the corporation of the German Reformed Church, by their president and secretary, gave a stipulation under their common seal, pursuant to the order of the

chancellor, made on the 20th May, 1848, that the mortgage to Lovett should be permitted to stand as security to him for the amount of the mortgage money therein mentioned, which was actually applied to the payment of taxes on the corporate property of the corporation, and to beneficial improvements thereon, with interest upon the amount so expended.

The plaintiff in his bill made, besides the corporation of the German Reformed Church, four other persons defendants, "as subsequent purchasers or incumbrancers, or otherwise." The corporation put in a separate answer to the bill of complaint, in which they stated the filing of the bill in chancery by Gable and his associates, against Miller and his associates ; the answer of Miller and his associates ; the decree of the assistant vice chancellor in favor of Miller and his associates ; the reversal of that decree by the chancellor, and his decree in favor of Gable and his associates ; the decree made by the court for the correction of errors, reversing the decree of the chancellor, and affirming that of the vice chancellor, and restoring the appellants, Miller and his associates, to all things which they had lost by the decree of the chancellor ; the filing of the remittitur in the court of chancery, and the order of that court, whereby the decree of the court for the correction of errors, was made a decree of the said court of chancery, and which order was entered *nunc pro tunc,* as of the 7th day of August, 1844. They admitted that Miller and his associates, did, pursuant to the requisitions of the decree of the chancellor, deliver over to Gable and his associates, the possession of the real and personal estate, and of the books, common seal, title deeds, and other papers of the said corporation ; but averred and insisted that in delivering up the property of the said corporation in pursuance of the said decree, they were only complying with the decree of the court, and denied that they thereby divested themselves of the right of appeal, and in case of the reversal of the said decree on such appeal, of being restored to all things which they had thereby lost, or that by such delivery of the corporate property to be held by the said Gable and his associates, pending the litigation, they in any wise impaired or affected the franchises of the said cor-

poration, or the right of Miller, or his associates, or successors, to be in fact, as well as of right, pending the said litigation, the sole legitimate board of trustees of the German Reformed Church in the city of New-York. · They denied that Gable and his associates were at the time of their delivering the bond and mortgage to Lovett, or at any time since, the trustees of right or in fact, of the corporation of the said church ; and they denied that the said alledged mortgage was executed under the common seal of the corporation, but alledged that the seal which was affixed thereto, was a seal which the said Gable and his associates caused to be made for their own use, and which seal was never at any time the seal of the corporation of the said church, and that the same had never been used by the legitimate board of trustees as such seal. They also denied that the said sum of $5,000, or any part thereof, had been expended in the payment of the debts and taxes, or in making repairs, or applied for the benefit of the said corporation. They also alledged that the judgment in the New-York common pleas, was fraudulently obtained by the said Lovett ; and that the original bill of complaint in this cause was filed on the 7th day of October, 1845, and that the subpœna issued therein was served on Gable, and that no other service was attempted to be made upon the said corporation of the said church, and that by means of such pretended service on the said corporation, and on the 12th day of January, 1846, and after the decree of the court for the correction of errors before mentioned, Lovett obtained by default, for want of an answer, after an appearance had been entered in the name of the said corporation, by solicitors employed by Gable and his associates, a decree for the payment of his alledged debt, and for the foreclosure and sale of the premises mentioned in the said bill of complaint, upon proof of service upon Gable, and that in pursuance of said decree, Lovett advertised the said premises for sale on the 5th day of February, 1846. The defendants further stated that they, who were the true and legitimate board of trustees, being the successors in office of Miller and his associates, and being the board of trustees to whom the property of the said corporation had been restored by Gable and his associates, after the

decree of the court for the correction of errors, having obtained information of those proceedings of Lovett; on or about the 24th of February, 1846, presented by their president, John Kræmer, under the seal of the corporation of said church, a petition to the vice chancellor of the first circuit, before whom the said original bill was filed, praying that the order taking the bill as confessed in the cause, as well as the decree of foreclosure and sale, with all the subsequent proceedings of Lovett, might be vacated, and that they, the true and legitimate board of trustees of the said corporation, might be permitted to appear and defend said suit. That on the 10th day of March, 1846, an order was made by the then vice chancellor, pursuant to the prayer of their petition, and a decree then and there made, by which he set aside the order taking the bill as confessed by the defendants, the corporation of the German Reformed Church in the city of New-York, the final decree of foreclosure and sale of the mortgaged premises, and also vacated the appearance theretofore entered for the said corporation by the solicitors employed by Gable, and authorized the said corporation to appear by a new solicitor to be appointed by the said Miller and others, or their successors, the trustees of the said corporation ; that Lovett appealed from this decree to the chancellor, who made an order affirming in substance the decree appealed from. Lovett filed a replication ; and the cause was, by an order of the supreme court, referred to three referees to hear and decide ; who after a hearing, reported that the bond and mortgage set forth in the plaintiff's (Lovett's) bill of complaint, were duly executed by the said corporation, and their corporate seal affixed thereto by the trustees de facto, of the said corporation, at the time of the execution of such bond and mortgage, and who had at such time the legal custody of such seal, and were legally authorized to affix the same to such bond and mortgage, and that such mortgage was a valid lien upon the premises therein described. The referees further reported that there was due from the defendants, the said corporation, to the said plaintiff, (Lovett,) upon the said bond and mortgage, the sum of $6,503,83. Upon this report, made May 31st, 1849, a final decree was rendered in the supreme

court in equity, in favor of Lovett; and on the 15th of June, 1849, the solicitor for the corporation served notice of an application for a rehearing of such decree at a general term of the court.

The second suit was commenced on the 15th December, 1846, by the corporation of the German Reformed Church in the city of New-York, who filed their bill of complaint in chancery, before the vice chancellor of the first circuit, against George Lovett; in which they alledged, that desiring to sell some unproductive property belonging to the said corporation, with a view of relieving the church edifice from a mortgage on it, then in the process of foreclosure, they were for the first time apprised on or about the 3d of June, 1846, that a judgment had been, on the 19th of June, 1844, docketed against them in favor of Lovett, in the court of common pleas for the city and county of New-York, for $2,000 debt, and $24,73 damages and costs, and a transcript filed the same day in the office of the clerk of the city and county of New-York; that upon a motion made in their behalf, an order was made on the 1st July, 1846, by one of the judges of that court, allowing the corporation of said church to come in and defend the said suit, and test the same on its merits. From that order, made at chambers, Lovett appealed to the court in banc; where, on the 26th day of December, 1846, an order was made, revoking the order made by the judge at chambers, without prejudice to the rights of the corporation to proceed in the court of chancery for relief in the matter. The bill went on to state the facts in relation to the suit brought by Gable and his associates, against Miller and his associates; the mortgage to Lovett, and that no part of the moneys supposed to be secured by the said mortgage, or by the said judgment, ever came to the use of the corporation, or was expended for the benefit of the property of the said church, unless a sum of less than $300, expended about the time of the receipt thereof, for insurance and repairs, and which was less than the accruing rents and other revenues of the church, were considered as so expended, but that the same was exclusively appropriated to the individual purposes of Gable and his associates, and of their minister, or in counsel fees and other charges connected with the suit aforesaid, and

leaving unpaid taxes, assessments, and interest on mortgages; that they had applied to Lovett to discharge the judgment of record, or to release some property which they were about to sell, from the lien of such judgment, but that he had refused, and that they had been compelled to sell on less advantageous terms than they would otherwise have done, and that they had been compelled in one case, to leave $500 in the hands of a purchaser in consequence thereof: and they prayed that Lovett might be decreed to cancel said judgment of record, and for other relief, &c. The answer of Lovett did not materially vary the facts, but denied the right of the plaintiffs to the relief they claimed. The plaintiffs replied; and both parties entered into a stipulation that the testimony taken in the first cause, should be used and taken as the testimony in this cause, and that the seal to the bond and warrant of attorney to confess the judgment, and that to the mortgage was the same, and was affixed under the like circumstances.

By an order entered at a special term of the supreme court, 7th January, 1851, this cause was directed to be heard in the first instance at a general term of the court, in the first judicial district; and in conjunction with the other [the first] suit between the same parties.

*Wm. Beach Lawrence,* for the German Reformed Church. I. The decree in the court of errors in the case of *Gable* v. *Miller,* establishes that Gable and his associates were not trustees at the time of the execution of the bond and mortgage, and of the bond and warrant of attorney. (*Gable* v. *Miller,* 10 *Paige,* 627, *reversed in error,* 2 *Denio,* 492. *Whitman and others* v. *The Germ. Ref. Church, in chancery before the chancellor. Williamson* v. *Field,* 2 *Sand. Ch. R.* 565.) II. Neither the bond and mortgage, nor the bond and warrant of attorney, were the acts of the corporation, and it is an universal principle that the purchaser of real estate can take no better title than his grantors possessed. A party in dealing with those claiming to be trustees must look to their authority, at his peril. (*Ang. & Ames on Corp.* 92, 423. *Wheaton's Law of Nations. Wil-*

*liamson .v. Berry,* 8 *How. U. S. R.* 465. *Same* v. *Ball, Id.* 568. 1 *R. S.* 730, § 65.) III. Though deprived of the use of the church property, and though obliged to procure another place of worship, the legitimate board of trustees and their successors, duly elected, continued trustees *de facto,* as well as *de jure,* during the whole time intervening the decree of the chancellor and that of the court of errors ; and their organization is recognized in Lovett's bill, and the cases as to the acts of *de facto* trustees, where there are no opposing claimants, have no application to Gable and his associates, who were moreover members of a different denomination, and did not even pretend to be officers of a German church. (*People* v. *Runkle,* 8 *John.* 363. 9 *Id.* 147. *Charitable Association* v. *Baldwin,* 1 *Met.* 365.) IV. But had Gable and his associates been trustees *de facto,* (*de jure* they confessedly were not,) that would have given them no right to alienate the property of the corporation, or to execute a valid mortgage. (*Harris* v. *Jay,* Cro. *Eliz.* 699. *O'-Brian* v. *Knivan, Cro. Jac.* 552. *Brindernagle* v. *Germ. Ref. Church,* 1 *Barb. Ch. R.* 16. *Lovett* v. *Germ. Ref. Church, McCoun, V. C. MS. S. C. before chancellor, MS. Rex* v. *Lisle,* 2 *Str.* 1090. 2 *Greenleaf's Laws of N. Y. p.* 132. 16 *Mass. R.* 488. 10 *Pick.* 172.) V. The property of the corporation, which was no party to the suit of *Gable* v. *Miller,* could not be affected by the decree of the chancellor, nor could the associates of Miller, who were not parties ; but were it otherwise, the decree of the court errors, so far from being modified so as to give validity to the acts of Gable and his associates while in possession of the property, expressly restores the appellants to all things that they had lost in consequence of it, and directs the property that had been surrendered, to be delivered up to them. (2 *R. S.* 225, § 29. *Lawyer* v. *Cipperly,* 7 *Paige,* 282. *St. Mary's Church,* 6 *Serg. & R.* 505. 2 *Kent,* 283, 292. *Ang. & Ames on Corp.* 580. *Bower* v. *Morris,* 2 *Taunt.* 374. *Taft* v. *Brewster,* 9 *John.* 335.) VI. The decree made by the court of chancery, under which Gable and his associates took possession of the property, was wholly void, having been rendered in a matter, in which the

courts of law had exclusive jurisdiction. (*Story's Eq. Pl.* §§ 10, 490. *Bloom* v. *Burdick,* 1 *Hill,* 139. *The Baptist Church in Hartford* v. *Witherell,* 3 *Paige,* 299. *The Commonwealth* v. *Arrowsmith,* 15 *Serg. & R.* 132. *Commonwealth* v. *Green,* 4 *Wheat.* 531. *The Attorney General* v. *Utica Ins. Co.,* 2 *John. Ch. R.* 371, 389. *The People* v. *The Utica Ins. Co.,* 15 *John.* 389. 2 *R. S.* 462, § 31. *Attorney General* v *Clarendon,* 17 *Ves.* 498. 2 *Kent,* 300. *Auburn Academy* v. *Strong,* *Hopk.* 278. *Rex* v. *Bishop of Chester,* 2 *Str.* 797. 2 *R. S.* 581, § 28, *sub.* 1. *People* v. *Peck,* 11 *Wend.* 604. 2 *R. S.* 173, § 36. *Id.* 52, *tit.* 2. 2 *Story's Eq. Jur.* § 1149.) VII. The corporate seal, if affixed to an instrument by a person not duly authorized, would have no validity ; but the evidence shows that the seal affixed to the paper in question was not that of the corporation. (*Lovett* v. *Steam Mill Association,* 6 *Paige,* 58. *Jackson* v. *Campbell,* 5 *Wend.* 576. *Case of St. Mary's Church,* 7 *Ser. & R.* 530. 1 *R. S.* 738, § 139. *Ang. & Ames,* 159.) VIII. It would be immaterial as to the legal effect of the decree of the court of errors, by which the legitimate board of trustees were ordered to be restored to all things that they had lost by the chancellor's decree, and the property delivered up to them, at what time, within the period limited by the statute, the appeal was taken ; but the facts in the case show the reverse of any acquiesence of the legitimate trustees in the decree of the chancellor that could have misled Mr. Lovett. IX. There is no pretense that any part of the mortgage moneys was received by the legitimate trustees, or came to the use of the corporation, but the contrary is admitted, and though the allegation is made in the bill, no evidence of its application to taxes and repairs was offered under the stipulation given by the chancellor's order, for Mr. Lovett's benefit. X. The ex parte order of the chancellor, made on the petition of the pseudo trustees, could have no possible effect against the corporation, unless the decision in *Gable* v. *Miller* was sustained by the court of errors. Besides, the power of the chancellor was confined to authorizing the sale of the real estate of religious corporations, and the application of the proceeds, (*Laws of* 1806, *ch.* 43, § 3,)

and that of the courts to authorize the mortgages, as well as sale of such property, was first given by section 33 of the code of 1848. (*Laws of* 1848, *ch.* 379.) For the confession of judgment which, equally with the mortgage, was, under the circumstances, an alienation of the real estate, no order was obtained. (*See act of* 1784; 1 *Greenl. Laws N. Y.* 77, § 5; *Sess. L.* 1806, *p.* 360, § 3; 2 *Kent,* 281; *Williamson* v. *Berry,* 8 *How. U. S. R.* 495, 540; *Darling* v. *Rogers,* 22 *Wend.* 483.) XI. The judgment in the common pleas, were it valid, (and its validity rests on the same basis as the mortgage,) is an effectual bar to the proceedings on the mortgage. The fact of a recovery of a judgment being established, the *onus* of proving as well as of stating that the complainant has exhausted his remedy at law, is, by the statute, compulsory upon him. (*North River Bank* v. *Rogers,* 8 *Paige,* 648. 2 *R. S.* 191, §§ 155, 156.) XII. The judgment confessed by Gable, in the name of the corporation, though invalid, operates as a cloud on their title. A court of equity has power to remove the cloud, by setting aside the judgment. (*Petit* v. *Shepherd,* 5 *Paige,* 493. *Hamilton* v. *Cummins,* 1 *John. Ch. R.* 520. *Galliano* v. *Lane,* 2 *Sandf. Ch. R.* 147.) XIII. This power is not affected by the proceedings, on motion in the court of common pleas. (*Haskett* v. *Connett,* 2 *Edw.* 75. *Arden* v. *Patterson,* 5 *John. Ch. Rep.* 44. *Simpson* v. *Hart,* 14 *John.* 63. *Lovett* v. *Germ. Ref. Church,* *Sup. Court, September term,* 1849.)

*P. A. Cowdrey,* for Lovett. I. The bond and warrant to the defendant were the deeds of the defendants, the corporation of the German Reformed Church, &c. II. The controversy here is not between the two sets of trustees, but between the defendant and the corporation. III. The bond and warrant were executed under the direction of those who were the trustees *de facto* at the time of giving the same. IV. These trustees, Henry Gable and others, were not mere strangers and intruders—they were in by color of title. (1.) The chancellor had decreed in favor of the said trustees, and directed the delivery to them of the common seal and all other evidences of title.

(2.) The said trustees went into possession under such decree by voluntary transfer from the other party, and became the trustees *de facto*. (3.) They had the additional title of office by election. V. The acts of these trustees *de facto*, so far as they affected the rights of third persons, were binding upon the corporation. (*People* v. *Collins*, 7 *John.* 549. *McInstry* v. *Tanner*, 9 *Id.* 135. *Trustees of Vernon* v. *Hills*, 6 *Cowen*, 23. *Green* v. *Cady*, 9 *Wend.* 415. *People* v. *White*, 24 *Id.* 525, 6.) (1.) The authority derived from the decision of the chancellor was sufficient to legalize the acts of the trustees until such decision should be reversed. (*Kittredge* v. *Folsom*, 8 *N. Hamp. R.* 98. *Poag* v. *Carroll*. *Allen* v. *Dundas*, 3 *D. & E.* 129. 1 *Plowden*, 279.) (2.) Such was the necessary effect of the not obtaining a stay of proceedings under the decree of the chancellor, as in case of a sale under a judgment, which is good although the judgment be subsequently reversed. (*Wood* v. *Jackson*, 8 *Wend.* 36.) (3.) The doctrine contended for by the plaintiffs, would lead to an entire suspension of corporate powers whenever there should be a controversy between trustees or directors, &c. (4.) The order of the chancellor granting leave to mortgage the church property, upon the application of Gable and others, trustees, &c., adjudicated the necessity of giving the mortgage, and afforded additional judicial authority to the trustees *de facto*. (3 *R. S.* 249.) (5.) It was impossible to execute the power to mortgage, except by the intervention of the trustees, who had the conceded legal custody of the seal for the time being. (6.) These evidences of title, the possession of the church and the church property, with all the muniments of title, including the possession of the seal—the decision of the chancellor declaratory of the legal title in the trustees—the unopposed election by the members of the church—the unopposed order of the chancellor for leave to mortgage, granted with the knowledge of the other set of trustees—all furnish warrant sufficient to authorize a third party to deal with the trustees *de facto* as the true and legitimate representatives of the corporation. VI. The party who has loaned his money, in good faith, to the corporation, is not responsible for any supposed misapplication of the money

by the officers of such corporation. VII. Neither the public nor third persons have any means of determining the title of officers *de facto*, against whom no proceedings by quo warranto have been brought to judgment. VIII. The judgment in this case was confessed by an attorney, and whether he had authority or not, the judgment will not be set aside as irregular, unless upon showing that the attorney is insolvent. (*Denton* v. *Noyes*, 6 *John.* 296. *Jackson* v. *Stewart, Id.* 34.)

*By the Court,* KING, J. These cases arise out of a controversy in relation to the trusts to which the temporalities of the above named religious incorporation are applicable ; and the original case is reported as *Gable* v. *Miller,* (10 *Paige,* 627,) and on appeal, 2 *Denio,* 492. Gable and his associates brought a suit in the court of chancery, against Miller and his associates, claiming that the latter, as trustees of the above named religious incorporation, had committed a breach of trust in applying the property of the corporation to the promulgation and support of religious doctrines other than those for whose support the property was given ; and claiming that the property should be delivered to the complainants, and the defendants removed as trustees. On the 18th of May, 1844, the chancellor made a decree, declaring Gable and his associates to be the rightful trustees, and directing Miller and his associates to deliver to the complainants, all the property, &c. of the corporation. This decree was subsequently reversed by the court of errors, and directions given that Miller and his associates should be restored to what they had lost by the erroneous decree of the chancellor.

Whilst Gable and his associates were in possession of the property of the corporation, and acting as trustees under the chancellor's decree, and before its reversal, they applied to the chancellor for leave to mortgage some real estate belonging to the corporation ; leave was granted, and a mortgage executed by them in the name of the corporation, to George Lovett ; and as security for part of the same debt, they suffered a judgment to be recovered by Lovett against the corporation.

Lovett *v.* The German Reformed Church.

The first case above mentioned, is a suit brought by Lovett for the foreclosure of his mortgage ; it has been referred to three referees to hear and decide, who reported in his favor, and a decree of foreclosure and sale has been entered in that suit; it now comes before this court on a rehearing, to set aside the decree and referees' report. The second suit is brought by the corporation, to set aside the judgment in favor of Lovett; by consent, the testimony taken in the foreclosure suit is to be used in this.

The main questions in both suits are the same ; and it is contended that the mortgage and judgment, given and suffered by those who, as the court of errors has decreed, were not trustees of the corporation, are invalid and void. Several points are stated, on behalf of the corporation, in support of the main proposition ; it seems to me, however, that they may be considered under two heads. *First :* Considering the corporation, as corporation, not to have been a party to the suit between Gable and Miller, and not affected by any of the proceedings in that suit. And, *Second :* Considering the corporation as practically a party to that suit, identifying itself with the prevailing trustees, and claiming the same benefits to which they are entitled. The argument of the counsel for the corporation applies itself to both these aspects of the case.

1st. It is objected that the corporation was not a party to the suit of *Gable* v. *Miller,* and was not bound by the decree therein, nor its property affected by such decree. Admitting this proposition to be correct, it in no wise affects the validity of the bond and mortgage and judgment; but, on the contrary, gives them additional strength. In this view of the case, the corporation have permitted Gable and his associates to take possession of their property, their seal, their records ; to act as their trustees ; and have in fact, held them out to the world as their trustees, and authorized to act for them ; and they are, as much as an individual would be, estopped from questioning the acts of their agents within the scope of their apparent authority. (*Angell & Ames on Corp.* 3d ed. *p.* 226, *ch.* 8, § 4.) As trustees, it was within the scope of their authority to apply to the chancel-

lor for permission to mortgage the property, and to defend, or omit to defend, suits brought against the corporation; being responsible, like all other agents, for breach of trust, though third parties not colluding with them, would not be affected thereby. In this aspect of the case, it seems clear to me, that the mortgage and judgment are both valid charges on the property of the corporation.

2d. Another aspect of the case is, that the corporation was represented by its trustees in the suit of *Gable* v. *Miller*, affected by the decree therein, and entitled to all the benefits resulting from the reversal of the decree. In this proposition, the corporation identifies itself with Miller and his associates, who, eventually succeeded in the court of errors, and can claim the same, but no greater rights than such successful trustees.

The first point made here is, that the chancellor had no jurisdiction of the case at all, and his decree is consequently absolutely void.

It is sufficient to say, in answer to this, that the chancellor in that very case, overruling doubts he had formerly entertained, expressly decided in favor of the jurisdiction; and this court, still the same, though administered by other officers, will not depart from its own adjudications. The question here, is *res adjudicata*. The next, and most material point, is as to the effect of the reversal of the decree of the chancellor upon acts done by the trustees appointed by that decree, whilst the decree was yet in force: Are they avoided or not?

Still considering the question as between the two sets of trustees, the court of chancery had authority to appoint *Gable* and his associates, trustees in the place of *Miller* and his associates, and to vest them with the trust property; and upon several considerations their acts, whilst such trustees, in relation to third parties, must be sustained. In the first place, appointed by a court of competent jurisdiction, they were trustees *de facto*, and their acts are good which concern third persons paying valuable consideration for them. They could have brought suit for the trust property against third persons, and no one would have been permitted, collaterally, to question their title. The principle

governing such cases is strongly laid down in 3 *Term Rep.* 129, (*Allen* v. *Dundas*,) *per Ashurst*, justice, "Every person is bound by the judicial acts of a court having competent authority, and during the existence of such judicial act, the law will protect every person obeying it."

Again, the restitution to which a party is entitled, upon the reversal of an erroneous judgment, is not restitution to every thing he has lost thereby; at least not to every thing which he has lost in consequence of the erroneous judgment; he recovers what is still in possession of his adversary, but not every thing else. For instance, land sold under execution issued on the judgment, and bought by a third party, does not revert to the original owner on the reversal of the judgment; and in *Bacon's Abridgment, title Error*, *M.* 3, citing *Drury's case* in 8 *Coke's Rep.* 142, *b.* it is held that if a man recovers by erroneous judgment, and by virtue thereof presents to a church, or enters into the perquisite of his villein; and after the judgment is reversed, these collateral things executed, shall not be divested thereby, but collateral things executory are, after reversal, as if no judgment had ever been. Indeed, unless the decree of a court of competent jurisdiction protects third persons, not parties to the suit, dealing with the successful party on the faith of the decree, no judgment can be of any avail until it shall have received the sanction of the highest tribunal in the land, or until the time for appealing shall have expired.

Thus much for the merits of the controversy. An objection is interposed in the first suit, that of *Lovett* v. *The German Reformed Church*, which seems fatal to the bill in its present shape. The plaintiff states that no proceedings have been had at law to recover the amount due on the bond and mortgage. The defendants plead, after excepting to its validity on the ground above mentioned, the judgment of $2,000 against the corporation as being for part of the debt secured by the bond and mortgage in suit, and the testimony sustains the plea. On this ground alone, then, the bill should be dismissed. (2 *R. S. 3d ed.* 205, 206. *North River Bank* v. *Rogers*, 8 *Paige*, 548.)

The report of the referees in the first suit, should be set aside,

and the bill dismissed, with liberty, however, to the plaintiff, within forty days after notice of the order to be entered hereon, if he has exhausted his remedies at law upon his judgment, to amend his bill, by inserting the usual allegations in relation to his proceedings at law upon his judgment, and if he shall so amend, the defendants shall have forty days after service of such amendments, to answer the same, if they shall be so advised ; and if answered, and a replication filed thereto, either party to be at liberty to apply for a reference to hear and decide such new issues, or bring the same to a hearing upon the decree heretofore made in this action, and such new issues ; to the end that a perfect decree may be made herein, and without prejudice to the right of the plaintiff upon dismissal of this suit, to file a new bill if he elects not to amend. The second suit, brought by the German Reformed Church, against George Lovett, should be dismissed with costs.

[NEW-YORK GENERAL TERM, October 6, 1851. *Edmonds, Mitchell* and *King,* Justices.]