## SUPREME COURT.

### MONTGOMERY agt. JOHNSON.

Where the plaintiff purchased a pew in a church, in pursuance of an assessment sale made by the trustees, under a resolution to raise funds to repair and paint the church, &c., and the defendant in possession claimed title under a sale made to him many years previous by the trustees of the church—*held*, that neither pialntiff nor defendant had any title in fee to the pew; it appearing that the church was incorporated under the general statutory act for the incorporation of religious societies, passed March 27, 1801; which act did not vest any power in the trustees to sell or dispose, in fee, of any real estate.

The plaintiff, therefore, not being able to show a better title than the defendant, could not sustain his action for the possession of the pew.

*Submitted, Steuben Circuit and Special Term, May,* 1853. Complaint states that the plaintiff is owner in fee of a slip or seat known as No. 82, in the Presbyterian meeting-house in the village of Prattsburgh. That defendant is in possession of said slip, and unlawfully withholds possession thereof from plaintiff, and plaintiff prays judgment that defendant surrender the same to the plaintiff.

The answer

*First.* Denies that the plaintiff is the owner of the slip or seat, or that defendant wrongfully withholds it, &c.

*Second.* States the following facts :

That in 1807 a religious corporation was formed in the usual way in the town of Prattsburgh, by the name of the Pratts-

burgh Religious Society, which corporation has continued in existence until the commencement of this action.

That in 1821 the society built a meeting-house, in which they have since held their religious meetings. The house was erected on lands belonging to the corporation.

That in 1845 the society remodeled and enlarged the said meeting-house, and, to pay the expenses of which, the society, on the 10th day of March, 1845, by resolution properly entered upon their book of records, directed the trustees to sell the slips or seats in said house to the highest bidders.

That, in pursuance of said resolution, the trustees afterward advertised and sold the seats and slips to the highest bidders; at which sale one Daniel Tichnor bid off and purchased the slip number 82, mentioned in the complaint, who afterward sold the same to the defendant. That the defendant paid the trustees for the slip, and the trustees gave him a certificate in words and figures following, viz.:

"Slip No. 82, $36,00. This certifies that Samuel A. Johnson has paid to the trustees of Prattsburgh Religious Society $36,00 dollars, which is in full for slip No. 82. By order of the trustees, Prattsburgh, 1846.

"JAMES H. HOPKINS, *Clerk*."

That the said sale was made by the said trustees without any condition or reservation whatever; since which time the defendant has been in the possession and occupancy of said slip, as owner thereof, and has never sold or conveyed the same to any one.

The reply states:

That on the 27th September, 1852, the society described in the answer, at a regular meeting adopted and made record of resolutions as follows, viz.:

"*Resolved*, That we paint the outside of the meeting-house with three coats, fix the windows, put a ventilator in the upper wall, and make other necessary repairs, and that the funds be raised by taxing the seats.

"*Resolved*, That the trustees of this society shall, within thirty days after an assessment is made, leave in each slip a

card with the amount so assessed on it, and that shall be considered a legal notice.

"*Resolved*, That all assessments shall be considered as falling due thirty days after said notice, unless the notice shall specify a time.

"*Resolved*, That if any person assessed shall neglect or refuse to pay such assessment within three months, it shall then be lawful for the trustees to take possession of said seat or seats and sell them, and out of the proceeds of said sale retain the amount of the assessment with interest, returning the surplus, if any, to the owner thereof."

That on the 15th day of November next after the passage of the above resolutions the society adopted the following resolution, viz.:

"*Resolved*, That the trustees employ a sexton, furnish wood and lights, and lay a tax on the slips to raise the funds, &c."

That, in pursuance and in virtue of said resolutions, the trustees made assessments upon the slips and seats, leaving in each seat or slip a card with the amount of the assessment thereon for the space of thirty days, after which time, and after the expiration of the term of three months thereafter, they advertised and sold at public auction all the slips and seats in said house belonging to persons who had neglected or refused to pay their assessments so made thereon. That the defendant was the owner of four slips in said house, including the one in question. That an assessment was made by the trustees, as aforesaid, upon said four slips. That the defendant neglected and refused to pay the same, and the trustees advertised and sold all of the said four slips for said assessments on the 11th day of March, 1853, at which time the plaintiff bid off and purchased the slip in question, and paid to the trustees therefor the sum of $12,50.

By a stipulation in writing, executed by the parties respectively, the following admissions are made:

That the statements contained in the defendant's answer and the plaintiff's reply in relation to the organization of the society, resolutions, records, and other proceedings, are true. That

the records of said society show that the slip in question was
sold to Daniel Tichnor in the year 1845, without any reserva-
tion.   That on the 11th of March, 1853, the trustees sold the
slips, or a part of them, for taxes levied to raise money to
pay for painting the house, lighting the same, and ringing
the bell, &c.   That before the sale commenced, the trustees
declared that they would sell only the society's interest in
the slips.   That the defendant was the owner or holder of
four slips, which were all taxed and sold.   That the two first
sold brought money enough to pay the taxes on all the defend-
ant's slips, but the trustees continued to sell the others; and
that the one last sold is the slip in question.   Also, that the
defendant gave the trustees notice that they must not tax or
sell his slips.

A trial by jury was waived by the parties, and the case was
submitted to the justice holding the circuit, upon the pleadings
and the above stipulation, and upon the written briefs of the
parties in person.

A. C. MONTGOMERY, *plaintiff in person.*
S. A. JOHNSON, *defendant in person.*

WELLES, Justice.   The answer states that in 1807 a relig-
ious society was formed *in the usual way* in the town of Pratts-
burgh, by the name of "The Prattsburgh Religious Society,"
&c.   The defendant derives his title from the trustees of this
society by purchase; and one question presented is, whether the
trustees had the power to confer upon him any such title as he
claims.   The answer states that the corporation was formed in
*the usual way.*   I know of no usual way of creating religious
incorporations, which existed at the time this one came into
existence, but that prescribed in the act entitled "An act to
provide for the incorporation of religious societies," passed
March 27th, 1801.   (1 *K. & R.* 336; *Ed. of the statutes pub-
lished by Chas. R. and Geo. Webster, Albany,* 1802.)   I shall
assume, therefore, that the "Prattsburgh Religious Society"
was incorporated in pursuance of that act, which contains no
provision conferring authority upon the trustees to sell any por-

tion of the real estate. The 4th section, which enumerates the powers of trustees of religious corporations, contains the following clause :

" And such trustees shall also have power to make rules and orders for managing the temporal affairs of such Church, congregation, or society, and to dispose of all moneys belonging thereto, and to regulate and order the renting the pews in their churches and meeting-houses, and the perquisites for breaking of the ground in the cemetery or church-yards and in the said churches and meeting-houses, for burying the dead, and all other matters relating to the temporal concerns and revenues of such Church, congregation, or society," &c.

There is no other section or clause in the act which vests in the trustees any power of alienation or disposition of the pews in the church or meeting-house. And this is certainly not a power to sell or dispose of in fee. It is no more than a power to lease the pews for a limited time, with a reservation of rent. The same provision is contained in the act of the same title, re-enacted with additional provisions April 5, 1813. (1 *R. L.* 212; 3 *R. S.* 244, 3*d ed.*) By the eleventh section of the last-mentioned act, the chancellor has power, on application of any religious corporation, to order the sale of the real estate belonging to such corporation. There is no pretence that the sale of the slip in question to Tichnor was under or in pursuance of this section. The general common law power of corporations in regard to the disposition of their property, real as well as personal, is coextensive with that of natural persons. It is not limited as to objects or circumscribed as to quantity. But with regard to religious corporations, chancellor Kent says :—" The better opinion upon the construction of the statute *for the incorporation of religious societies* is, that no religious corporation can sell in fee any real estate without the chancellor's order. The powers given to religious societies, incorporated under that act, are limited to purchase and hold real estate, and then to demise, lease, and improve the same for the use of the congregation. This limitation of the corporate power to sell is confined to religious corporations; and all others can buy and sell at

pleasure, except so far as they may be specially restricted by their charters or by statute." (2 *Kent's Com.* 281.)

In the case of Vielie agt. Osgood, (8 *Barb. S. C. R.* 130,) it was held by the general term in the 4th district, PAIGE, WILLARD, and HAND, Justices, that the trustees of a religious corporation, under the act before referred to, have not the power to sell and convey by an absolute deed in fee a slip in the church or meeting-house. That such power is limited to a demise or lease of the real estate of the corporation, or to the renting of the pews in the church of the corporation. See also Voorhees and wife agt. the Presbyterian Church of Amsterdam, (8 *Barb. S. C. R.* 135,) and the Reformed Protestant Dutch Church of Garden-st. agt. Mott and others, (*7th Paige R.* 77.) There are no authorities, which I have met with, in conflict with those to which I have referred. Applying the principles deducible from those to the present case, it seems to follow, that neither Tichnor nor Johnson, the defendant, have acquired any title to the slip in question.

But how stands the case with the plaintiff? Has he acquired any title? Most clearly not, if the views above expressed are sound. The action proceeds upon the assumption that the defendant is in the possession and occupancy of the slip, and is in the place of the former action of ejectment by the plaintiff to recover the possession from the defendant. In order to recover he must show a title in himself better than that of defendant. This he has not done. No one, it seems to me, but the trustees of the society can deny the defendant's right to remain in the occupancy of the slip in question.

The plaintiff's claim is founded upon a purchase from the trustees, which was equally void, for want of power in the latter to sell, with the sale to the defendant.

The defendant is, in my opinion, entitled to judgment.