MANNING *vs.* THE MOSCOW PRESBYTERIAN SOCIETY.

Although a religious society, organized under the act of April 5, 1813, is prohibited from selling its real estate, except under an order of the chancellor, or of the court of chancery, yet it may, without any order for that purpose, execute a mortgage upon its land, to secure the payment of a debt.

APPEAL from a judgment entered in favor of the plaintiff, upon the report of a referee.    The action was brought to foreclose a mortgage given by the defendants to Felix Tracy, upon certain real estate in the village of Moscow in the county of Livingston, upon which the church edifice of the defendants was situated, bearing date May 29th, 1835, and assigned by Tracy to the plaintiff.    The defendants were a religious corporation, organized under the 3d section of the act to provide for the incorporation of religious societies, passed April 5, 1813.    No order was made by the chancellor or other officer or by any court, authorizing the giving of the mortgage.    The other facts are stated in the subjoined opinion of the court. The ordinary judgment of foreclosure and sale was entered upon the report of the referee.

*A. M. Bingham,* for the appellant.

*James Wood,* jun. for the respondent.

*By the Court,* WELLES, J.   Prima facie evidence was given
of the execution of the mortgage, to foreclose which the action
was brought.   The evidence of Mr. Tracy shows that the de-
fendants were in his debt to the amount for which the mort-
gage was given, for advances made by him for the benefit of
their church property.   That the mortgage was given to se-
cure that indebtedness, in pursuance of a vote of the trustees,
and was executed by a majority of them, and by their clerk,
with their corporate seal affixed, and that the mortgage has
been duly assigned by the mortgagee to the plaintiff.   The
evidence given by the defendant does not disprove these facts
so clearly as to justify the court in disturbing the finding of
the referee upon any of the facts found by him.

The only question which remains to be considered is, whether
the defendants had power to give the mortgage without an
order of the chancellor or of the court of chancery, according
to the provisions of the 11th section of the act entitled "An
act to provide for the incorporation of religious societies,"
passed April 5, 1813.   (1 *R. S. 4th ed.* 1179.)

Section 3 of the act, after providing how religious societies,
other than those provided for in previous sections, shall be in-
corporated, provides as follows : "And such trustees and their
successors shall also thereupon, by virtue of this act, be a body
corporate, by the name or title expressed in such certificate."
Section 11 provides that it shall be lawful for the chancellor,
upon the application of any religious corporation, in case he
shall deem it proper, to make an order for the sale of any real
estate belonging to such corporation, and to direct the appli-
cation of the moneys arising therefrom by said corporation to
such uses as the same corporation, with the consent and appro-
bation of the chancellor, shall conceive to be most for the
interest of the society to which the real estate so sold did
belong.   It has been repeatedly held that a religious corpora-
tion organized under this act, is prohibited from selling its
real estate in any other way than the statute provides.   (*Wil-
lard's Eq. Jur.* 735, *and authorities there cited.   2 Kent's*

*Com.* 281. *Montgomery* v. *Johnson,* 9 *How. Pr. Rep.* 232, *and authorities there cited.*)

But the question still remains, was the giving of this mortgage *a sale* of the real estate of the defendant? We are of the opinion that it was not. It was not a sale in the ordinary and popular acceptation of the term; nor, indeed, in the strict legal sense. In either sense, a sale embraces the idea of a transfer of the legal title of the property sold, from the vendor to the vendee, for a consideration passing from the latter to the former. A sale, to be complete, in general, requires the delivery of the possession of the thing sold. It was sales in this sense by trustees of religious societies, that the statute was designed to restrain and regulate. Since the revised statutes took effect a mortgage has been held to be merely the creation of a specific lien, as security for the performance of the conditions expressed, which are either the payment of money or the performance of covenants or contracts, and does not pass the title, which continues in the mortgagor until foreclosure and sale. It is on this ground, and for this reason, doubtless, that the statute prohibits the maintaining an action of ejectment upon a mortgage. (2 *R. S.* 312, § 57. *Jackson* v. *Myers,* 11 *Wend.* 533, 538. *Astor* v. *Hoyt,* 5 *id.* 603 *to* 615, 617.) A mortgagee may assign the mortgage debt by parol, which draws after and with it the mortgage; and if the title is in the mortgagee, then the title to real estate may be transferred by parol, which cannot be done.

There is nothing in the spirit or policy of the statute, nor any principle of public policy, which forbids a religious corporation giving a mortgage upon its real estate, to secure a debt legally contracted, any more than in creating a lien by the voluntary confession of a judgment, which, it is decided, may be done. (12 *Barb.* 67, 410.) For the foregoing reasons the judgment should be affirmed, with costs.

Ordered accordingly.

[MONROE GENERAL TERM, March 1, 1868. *Welles, Smith* and *Johnson,* Justices.]