32   89
73   698,

JOHN A. COLE et al. *v.* J. B. MILLER and WIFE, et al.

1. CHANCERY: DISTRICT CHANCERY COURT OF HOLLY SPRINGS.—A cause in which a final
decree had been rendered previous to the passage of the Act of 1848, which
provided for a division of the Vice-Chancery District of Holly Springs, and the
establishment of a new district, is not embraced in the provision of that Act,
which required all causes belonging to the new district, and which were then
"undetermined," to be transmitted from the court at Holly Springs to the new
court thereby established at Hernando ; and therefore a bill to review and re-
verse a final decree, which had been rendered in the court at Holly Springs pre-
vious to the passage of the act, should be brought in that court, although the
parties reside, and the property is situated in the new district.
2. CHANCERY: BILL OF REVIEW: NATURE OF.—A bill of review is an independent
proceeding, and does not constitute a part of the original cause.
3. CHANCERY: FINAL DECREE: EFFECT OF.—After the expiration of the term of the
court, at which a final decree is rendered, the cause can no longer be considered
as depending, and all jurisdiction of the court over it is ended, except in cases
where infants are parties defendants, *and where there is an express reservation to
them by the decree of time in which to contest it,* and also in cases where the de-
fendants are non-residents.
4. CHANCERY: JURISDICTION OF OLD CHANCERY COURTS OVER BILLS OF REVIEW.—The
Superior and District Chancery Courts, since the adoption of the constitutional
amendment abrogating them, except for the disposition of causes then depend-
ing, have no jurisdiction to entertain bills of review, to correct final decrees
rendered in those courts before the date of the amendment, except, perhaps, in
cases where the defendant in the original suit was a minor, and time is expressly
allowed him in the final decree to come in and contest it; or unless the defend-
ant was a non-resident.

APPEAL from the District Chancery Court at Holly Springs.
Hon. James F. Trotter, vice-chancellor.

This was a bill of review, filed in the court below, by Miller and
wife, and others, the heirs of J. S. Porter, deceased, on the 20th
of April, A. D. 1856, against John A. Cole and James N. Cole,
seeking to re-open and reverse a decree made in that court, against
the heirs of said Porter, in January, 1848.   It appeared from the
allegation of the bill, that Mrs. Miller and the other complainants,
were minors at the time the decree was rendered, in 1848, and
they are all still minors, except Mrs. Miller, who attained her
majority in December, 1854 ; it also appeared that the final decree,

rendered in 1848, contained no reservation of a right to them to contest the decree after the expiration of their majority.

The defendants demurred to the bill, on the ground of a want of jurisdiction in the court. The demurrer was overruled, and the defendants appealed.

*A. M. Clayton*, for appellants.

This is a bill of review, filed in the month of April, 1856, to review and reverse a decree rendered in the Chancery Court at Holly Springs, in January, 1848, and for other relief. There is a demurrer to the bill, for want of jurisdiction, and for other causes.

The original decree, which is sought to be reviewed, was rendered in the Vice-Chancery Court at Holly Springs, in January, 1848. No doubt the court then had jurisdiction. On the 22d of February, 1848, another law was passed, creating a new vice-chancery district, and for that purpose taking off four of the counties, which previously formed a part of the Holly Springs district. The new district embraced the county of Tunica, in which the land in dispute lies, and in which the present defendants then, and now reside. The court for this new district was to be held at Hernando, and all papers, "touching any proceeding in said court, yet undetermined," which belonged to the new district, were directed to be transmitted to Hernando. Hutch. Code, 788.

On the 6th of February, 1856, the Act was passed, to insert in the Constitution, the recently adopted amendments, in relation to chancery courts. The original clause of the Constitution "was striken out and abrogated." But the Chancery Court, and Vice-Chancery Courts, were continued as organized, until November, 1857, "for the disposition of causes now depending therein."

In this state of the law, the question arises, can this bill of review be filed, and if so, in what court? On the 19th of February, 1856, the act took effect, which directs how new suits in chancery are to be brought; and it contains no provision in regard to the filing of bills of review of decrees previously rendered. The decision must therefore be made on general principles.

The writers upon equity pleading, class bills of review under

the head of bills in the nature of original bills. Mitford, 122. Judge Story says, they are of a mixed character, but classes them under the same head. Story, Eq. Pl. § 388; 3rd ed. 411. They are not considered as a continuance of the former suit, but are in the nature of original bills. Ibid. Gilbert calls them bills of review and reversal. Forum Romanum, 184. Lube says, they pray a *subpœna,* and that the decree may be reviewed, reversed, and set aside. Lube, Eq. Pl. 230; Mitford, 127; Story, 19. Appearance to a bill of review is enforced in the same manner, as to an original bill. 3 Daniel, Ch. Pr. 1732. Robinson, in his practice, says: "A bill of review ought not to be received, until the decree sought to be reviewed and reversed, is final, and the parties out of court. Vol. 2, p. 414; 2 Hen. & Mun. 589. In *American Bible Society* v. *Hollister,* 1 Jones, N. Car. Eq. R., the court says: "Beyond all doubt, a case is heard and determined, when a final decree has been passed and entered upon the records. To call a bill of review an incident to a former suit, requires some latitude of expression." A bill of review terminates by setting aside the decree reversed or impeached. 2 Amer. Chan. Dig. by Wheeler, 338. That is the whole scope and extent of the prayer of the bill, if the decree has not been carried into execution; if it has, then the prayer is to put the party in the same situation in which he would have been if the decree had not been executed. 2 Mad. Ch. Pr. 413; see also, Story, Eq. Pl. 334, § 420. Now when a final decree is pronounced, the case is ended, the parties are dismissed, and the court has discharged its functions. 1 Jones, N. C. Eq. Rep. In *Hill* v. *Richards,* 11 S. & M. 200, the court said, "that after a dismissal of a bill, the original cause is no longer in court, the parties are no longer before it, and its jurisdiction is at an end." A final decree upon principle rests on the same ground; for the dismission of a bill is a final decree. When is a cause depending? Only during the continuance of the controversy, and whilst something is doing to keep it alive, and in activity. 2 Burrell, Law Dic.—title *Lis Pendens.* It seems clear, that this case was not *depending* in the court, on the 6th of February, 1856, and that therefore any attempt to renew the controversy, in that court, was of an original character, and there-

fore not authorized by the law. The fact that the Statute of Limitations applies to a bill of review proves that it is an original proceeding. If this construction should lead to a failure of justice in a particular case, this affords no ground for the interposition of the court. A *casus omissus* in a statute cannot be supplied by judicial interpretation. Blackwell on Tax Titles, 725; 14 Johns. 479; 6 Pick. 362; 9 Porter, 690.

But if this be not so, and the case was in any respect *then depending* in the court, its jurisdiction was confined to that part of the bill which was not original. To what extent does this go? No further than to this point. The court, on the bill of review, might correct any error it had committed, and thus put the decree out of the way. That would seem to be of an appellate, rather than an original character. When this was done, its functions would cease. It could take no cognizance of the new prayer, or of the new matter; that would be the exercise of original jurisdisction, which the statute prohibits.

But if any jurisdiction remained in either court, at the time of filing this bill of review, was it in the court at Holly Springs, or at Hernando? The act creating the court at Hernando, directed "that all papers touching any proceeding in said court yet undetermined," which belonged to the new district, were to be transmitted to the court at Hernando. The intention of the legislature, no doubt, was to give to that court the whole equitable jurisdiction of every character, which pertained to the four counties of the new district. None was reserved to or retained by the court at Holly Springs over the new district. Either this case was then determined, or it was not. If the latter, it should have gone to Hernando; if the former, it was ended finally, and neither court could interfere with it. The true state of the case however was, that the case was finally determined, subject, however, to be re-examined upon appeal, writ of error, or bill of review. If the object of the legislature was to confer all jurisdiction in equity over cases in these four counties to the court at Hernando, a bill of review was included equally with every other mode of proceeding. New process had to be issued, and in point of fact was issued, to bring in the parties. The process of the court was intended to

be confirmed, by the act of the legislature, to persons or to property within its limits.   The 9th section of the Act creating the first Vice-Chancery Court, in our view, has no application to the case, because this bill of review could not have been commenced or prosecuted in the Superior Court of Chancery.   The jurisdiction of the court, we think, must be determined irrespective of that clause.

We think the argument of opposing counsel, that the Vice-Chancery Court was not abolished, along with the Superior Court of Chancery, by the amendment to the Constitution, is not well founded.   · In *Houston* v. *Royston*, 7 Howard, 543, the constitutionality of the Vice-Chancery Court was sustained only upon the ground, that it was a court inferior to the Superior Court of Chancery, and existed in subordination to it.   When the Superior Court, on which it depended, was abolished, both went together; indeed, the very terms of the amendment fully imply the destruction of the whole system of Chancery Courts of every grade in the State, and the creation of a new set.

It is true, as a general rule, that a bill of review must be filed in the court which pronounced the decree.   The principle on which the rule rested in England must have been, that there was but one Chancery Court, and the jurisdiction necessarily belonged to that. The power of the court to call the parties before it, and to hear and determine the matter in dispute, was what gave the jurisdiction.   The order of things cannot be reversed, so as to assume jurisdiction, and say, that therefore the court has power to call the parties before it and decide their controversy.

But, in this case, the court which pronounced the decree was no longer in existence at the time this bill of review was filed.   The court which pronounced the decree, was a court organized with jurisdiction over eight counties, of which Tunica was one.   The court in which this bill is filed, is a court with jurisdiction over four counties, of which Tunica is not one.   A whole divided into two halves, is no longer a whole; and this would seem to be true in regard to a court, as well as to any other thing.   The court at Holly Springs, in this instance, is no more the court which pronounced the decree, than the court at Hernando.   The two toge-

ther made up the court at Holly Springs. We can only solve the difficulty by carrying out the intention of the legislature, and giving to the court at Hernando all equitable jurisdiction in the district for which it was created. Jurisdiction here must depend upon the laws which create the courts, not upon any analogies to the organization of courts elsewhere. If either of these courts has jurisdiction of the case, it would seem to be the court at Hernando.

But it may well be doubted, whether either of the courts possess the power to entertain this bill of review. So far as it partakes of the character of an original bill, certainly neither of them does, for after the 19th of February, 1856, all jurisdiction of original matters ceased in them. The complainants in this case have not drawn the line between the part which is original and that which is not. As a part is certainly beyond the jurisdiction of the court, ought it not to decline to exercise any, or to interfere, until the boundary is pointed out, and it is shown how far it may lawfully go.

It will be borne in mind that these courts were abrogated, with all their powers, except for a limited time, and for the specific purpose of "disposing of causes then depending therein." Was this case then pending? It had been determined in January, 1848, and was therefore not transferred to Hernando as an *undetermined* case. Bills of review lie only to final decrees. Authorities cited above. They do not lie to undetermined causes or to interlocutory decrees.

To constitute a *litis pendentis*, there must be something done to keep it alive and in activity. In the sense of the law, then, this cause was not depending, and no bill of review was given by the statute. By possibility there may be a failure of justice, because of this omission to provide for bills of review; but if it be a *casus omissus*, it is for the legislature to supply it.

*Watson* and *Craft*, for appellees.

The plea of the defendant was an insufficient answer to the bill of review, for the reason that the court in which a decree was rendered alone has jurisdiction of a bill of review thereto. This

proposition will be more fully discussed in considering the demurrer to the bill.

The demurrer was placed upon two grounds : 1st. That there was not error of law apparent upon the face of the decree. 2d. That the constitutional amendment, which had been adopted before the filing of the bill of review, and laws passed in pursuance thereof, had stripped the court of the jurisdiction to entertain the bill.

The question of jurisdiction will first be considered.

A bill of review is in the nature of a writ of error. Story, Eq. Pleading, sec. 403 ; 13 Peters, 13. Its object is to procure an examination, alteration, or a reversal of a final decree made upon a former bill. Against errors in a final decree of a court having jurisdiction, the only remedies are appeal, writ of error, and *supersedeas,* or bill of review. Such final decree is a bar to all proceedings of an original character. No single authority or *dictum* can be found countenancing the idea that a bill of review can be filed in any court, but that in which the decree sought to be reviewed was rendered. And that the court rendering the decree sought to be reviewed, has jurisdiction of a bill of review thereto, in a proper case for such bill, is as well settled as any one principle of equitable jurisprudence whatever.

The bill of review is not given by statute ; but the authority of a Court of Chancery to review its decrees, is said to rest on an order or ordinance of Lord Bacon, whilst Chancellor of England. Story, Eq. Plead. sec. 404 ; 10 Yerger, 66 ; 9 S. & M. 145, 153, 154. The statute law of Mississippi recognizes the existence of the remedy by bill of review. Hutch. Code, 763, § 59 ; Ib. 827, § 15. The constitutional amendment and laws transferring equity jurisdiction to the Circuit Courts, leave the general jurisdiction of the Superior and Vice-Chancery Courts unaffected and unimpaired as to cases which had therein been decided, or were therein pending, until the first Monday in November, 1857. The language of the constitutional amendment is :—

"The Superior Court of Chancery, and the several Vice-Chancery courts, shall continue as now organized, until the first Monday of November, 1857, for the disposition of causes now depending therein."

Cole et al. *v.* Miller et al.

Said amendment proceeds :—

"The legislature shall provide by law for the preservation of the records of the said Chancery Courts, and also for the transfer of all causes that may remain undetermined therein, to other courts for final decision." Sess. Acts, 1856, chap. II., 25, 26.

In pursuance of these constitutional provisions, the legislature, in its acts in relation to Chancery Courts, Sess. Acts, 1856, chap. XIII., p. 37, left the jurisdiction and powers of the old Chancery Courts, as to all cases that had been brought therein, whether determined or still pending, unimpaired and in full force. By the 8th section of the act, p. 61, provision is made for the removal of causes into the Circuit Courts. By article 117, p. 63, provision is made for the execution of decrees rendered in the old Chancery Courts, and which shall remain unexecuted in whole or in part, after the first Monday of November, 1857. By article 119, p. 64, provision is made for the prosecution of appeals, or writs of error, after the first Monday of November, 1857, from any final decree rendered in the old Chancery Courts prior to that time. Article 118, p. 63, provides for the care and custody of the papers and records of the old Chancery Courts for one year after the first Monday of November, 1857; and after the expiration of this year, for the permanent care and custody of the same thereafter. By article 122, p. 65, it is provided :—

"The Chancery Courts to which any cause may be transferred, in pursuance of the Act, shall have full power to proceed therein, and to hear and determine the same, in the same manner as in cases originally commenced therein."

And by article 124, p. 65, after the first Monday of November, 1857, all laws establishing and regulating the practice of the old Chancery Courts, are repealed.

From the foregoing review of the constitutional amendment, and the legislation in pursuance thereof, abolishing the old Chancery Courts, and transferring chancery jurisdiction to the Circuit Courts, it will be seen that, at the time this bill of review was filed, and indeed now, the old Chancery Courts remain in existence, for all purposes connected with all causes that had ever been brought in them, and which were then in a condition for any steps to be taken

on them.   Unless this view be correct, no amended or supplemental bill, or bill of review, or petition of any kind, could rightfully have been filed in said courts since March 11, 1856, when the act giving the Circuit Courts chancery jurisdiction was approved.   Nor could an infant defendant come in under a day given; or an absent defendant.   See 10 Leigh, 507.   Suppose a decree had been previously rendered, reserving liberty to the party benefitted thereby to apply to the court for further relief in relation to the case; could not the relief be granted?   See 3 Munford, 29; 5 Leigh, 13; 3 Robinson, Chanc. Prac. 403, 404.   A final decree may contain the reservation of this right.   Nothing is anywhere said about the right of a party to sue out a writ of error to a decree in the old Chancery Courts, rendered therein prior to the transfer of their jurisdiction to the Circuit Courts; yet the right to do this no doubt exists, and for the obvious reason, that this right has nowhere been taken away.   And so, too, the right to file a bill of review in a proper case, and which is in the nature of a writ of error to a decree rendered in one of the Chancery Courts prior to the time when chancery jurisdiction was conferred on the Circuit Courts, continues to exist, because it has been by no law taken away or abolished.   A legal and unquestionable right is not to be lost to a party by inference, or remote implication.   An existing right will be preserved and protected by the courts, until it has been lost by the act of the party, or taken away by operation of the law. Breese, 296; 6 Johns. 103; 7 Ib. 102, 103.

A bill of review is not an original proceeding, but is a continuation of the cause on which the decree sought to be reviewed was rendered.   When this bill of review was filed, it is very certain that no Circuit Court had jurisdiction to entertain it.   No such jurisdiction had been by the Constitution, or by law, conferred upon any Circuit Court.   The jurisdiction to entertain it, which had existed in the court where the decree sought to be reviewed, was rendered, continued to exist because it had not been transferred to any other court, nor prohibited to the old courts.

In the argument of this case in the court below, it was said that, by neglect or oversight, no provision was made or existed for the filing of bills of review to decrees rendered in the old Chancery

Courts, after March 11, 1856, the time when the law was passed transferring chancery jurisprudence to the Circuit Courts; and that at least it was very clear that, after the first Monday of November, 1857, no such bill of review could be filed without further legislation. As to the latter branch of this proposition, it is not necessary that we should controvert it. What will be the state of the case after the old Chancery Courts cease for all purposes, need not now be determined. Until they do cease to exist, the rights and remedies of parties as to causes which had been decided, or existed in them, prior to the transfer of chancery jurisdiction aforesaid, remain, we insist, as they were before this act of transfer was passed. The true rule on this subject is stated in 6 Smedes & Marshall, 632, 633, and 1 Cush. 74. In these cases the question was as to the repeal of a statute; but the same principle is applicable to our present inquiry, because the right of the complainants to this bill of review prior to March 11, 1856, was as clear and unquestionable as any express statutory right whatever. The principle in question is, statutes are not considered to be repealed by implication, unless the repugnancy between the new provision and the former statute be plain and unavoidable. 16 Peters, 342; 3 Bibb, 518; 6 S. & M. 632, 633; 1 Cush. 74. We even believe that bills of review to decrees in the old Chancery Courts may be filed without further legislation, after the first Monday in November, 1857. After that time, by the 118th article of the Circuit Court Chancery Act, legally authenticated transcripts of the records of the old Chancery Courts are provided for; and the new Chancery Courts will in legal contemplation, for many purposes, be but a perpetuation of the old Chancery Courts. See, also, article 122 of the same Act, p. 65.

The Statute of Limitations did not bar this bill of review when filed. The period of limitations is two years, "saving to infants a right to obtain such a bill within two years after their respective disabilities are removed." Hutch. 827, § 15. When this bill was filed, the eldest of the complainants who were the minor heirs left surviving him by the decedent, J. S. Porter, had been of age but little more than one year.

A bill of review for errors of law apparent on the face of the

decree, may be filed without the leave of court.    Story's Eq.
Plead. § 412, 417 ; 1 Paige, 564 ; Wright's Conn. Reports, 532 ;
2 Atkinson, 534 ; 5 Call, 459.

But this question does not arise, and need not be decided in this
case.    The plea and demurrer are a waiver of this question, and
the overruling of the same by the court will be construed to be
leave to file the bill, if the leave of the court had been necessary.
2 Atkinson, 534, 535 ; 5 Humph. 428, 435, 436.

HANDY, J., delivered the opinion of the court.

This was a bill of review, filed by the appellees on the 24th
April, 1856, against the appellants, in the District Chancery Court
at Holly Springs, to review and reverse a decree made in that
court against the appellees, in January, 1848, for errors on the
face of the decree.

The appellants filed a general demurrer to the bill, which was
overruled; and from that order this appeal is taken.

The objections urged in support of the demurrer, deny the juris-
diction of the court upon two grounds ; and these present the
questions for our present examination.

First.    It is objected that the land in controversy lies in Tunica
county, which was also the place of residence of the appellant ; and
that by the Act passed in February, 1848, the Vice-Chancery Dis-
trict of Holly Springs, which previously embraced the county of
Tunica, was divided, and a new district established, embracing that
county, the courts for which were required to be held, and were
held at Hernando, and all papers in the court at Holly Springs,
touching any proceeding then "undetermined," belonging to the
new district, were required to be transmitted to the court at Her-
nando.    It is therefore contended that the bill of review, if it could
be brought at all, should have been filed in the District Chancery
Court at Hernando.

This position is based on the assumption that it was the inten-
tion of the act establishing the new district, to transfer the whole
equitable jurisdiction of every character which the court at Holly
Springs had acquired over rights in the counties composing the
new district, to the court at Hernando.    But we do not consider

this view reconcilable with the language of the Act. It provides that all papers in the court at Holly Springs, "touching any proceeding in said court *yet undetermined,*" should be transmitted, &c. A proceeding then undetermined could not, upon any just principle of construction, be held to be embraced in this language; and it must be presumed that such suits as were then determined, and brought to a close by final decree in that court, should remain there with all their incidents, and were not intended to be removed. So far, therefore, as this act in relation to the two District Chancery Courts is concerned, we do not think that the objection to the jurisdiction is well founded.

·· The second objection is, that by the amendment to the Constitution, adopted on the 6th February, 1856, the District Chancery Courts, together with the Superior Court of Chancery, were abrogated from the date of that amendment, except for the disposition of causes then depending therein; and that in virtue of this constitutional provision, the District Chancery Court had no jurisdiction to entertain this bill of review.

This objection presents the question whether, since the amendment of the Constitution, the Chancery Courts are competent to entertain a bill of review upon a decree rendered before the adoption of the amendment, and when the general jurisdiction of the court over the cause was at an end.

It is to be observed that the general act, regulating the practice and proceedings in suits in Chancery, passed at the same session of the legislature at which the amendment to the Constitution was passed, makes no provision in relation to bills of review in cases like the present; and, therefore, we have to determine whether a bill of review upon a decree over which the court had lost its jurisdiction, is such a proceeding as is embraced within the language of the amendment—in other words, whether a cause in which a final decree had been rendered, and the term of the court at which it was rendered was ended, before the adoption of the amendment, can be considered as a "*cause depending*" within the contemplation of the amendment so far as to allow the filing of a bill of review.

Some light may be thrown upon the question by considering the nature and character of bills of review.

Such a bill is said to be in the nature of a writ of error; because its object is to have the decree examined and revised. Story, Eq. Pl. § 403. Yet it is not considered as a continuance of the former bill, but is in the nature of an original bill. Ib. § 388. Process must be issued and served, and the appearance of the defendant must be enforced as upon an original bill, and defence may be made to it as an independent proceeding. 3 Daniel, Ch. Pr. 1725, 1732. It extends only to the decree and the pleadings in the cause, and not to the proofs; its object is specific, not general, and therefore is very properly said not to be a continuance of the former suit. Story, Eq. Pl. § 407, 388. But (what is the most important to the present question) it lies only after a final decree. Ib. § 408.

From these characteristics of a bill of review, it is evident that it does not constitute a part of the original cause, and although it has reference to it, yet that it is an independent proceeding. And it appears to be manifest, that the filing of it cannot have the effect to make that a "cause depending" which was at the time of filing it, a determined cause, over which the jurisdiction of the court had ended.

There cannot be a doubt but that, in every legal sense, the original suit must be considered as at an end upon the rendering of the final decree, and no longer subject to the jurisdiction of the court after the lapse of the term. Such was its condition when the amendment to the Constitution was made; and as that amendment continued the jurisdiction of the court only in cases *then depending*, it would be doing violence to language as plain and well defined as any in the law, to hold that it was intended to apply in any case to causes which *had been determined* by final decree. We are bound to hold that the legislature intended what they have plainly expressed; and as they have clearly stated the extent to which they intended the jurisdiction of these courts to continue, we have no authority to say that they intended it to extend to other cases not within the plain language; but it must be presumed that such cases were intentionally omitted. But if it

be a *casus omissus* we have no power to supply it by construction. Dwarris on Stat. 711, 695.

In opposition to this view of the subject, it is urged that it would deprive an infant defendant or a non-resident to whom time was allowed to come in and contest the decree, of all benefit of that right. But these cases are exceptions to the general rule that the jurisdiction of the court ceases with the final decree. For in the case of an infant, the right is expressly reserved in the decree, and in the case of a non-resident, it is reserved by the statute; and in either case, the jurisdiction is not entirely at an end until the period allowed has transpired. Until that time, and for that purpose, such cases must be considered as depending and not finally determined. But there is no such right reserved in decrees generally, in order to allow a party to file a bill of review; and in such cases, there is no exception to the general rule.

From the omission of bills of review, both in the amendment to the Constitution and in the contemporaneous statute in relation to Chancery Courts, it would appear that it was not intended to continue that remedy in cases situated like the one before us. This may work a hardship in some cases; but unless the parties have been guilty of laches, they can, in most cases, obtain the same relief by writ of error that they could have obtained by bill of review; and it is not improbable that the legislature intended to leave them to that remedy, rather than to continue the jurisdiction of the Chancery Courts by authorizing bills of review upon decrees previously rendered.

But whatever may have been the reason of the legislation upon the subject, it is clear that the court below had not jurisdiction, under the language of the amendment, to entertain the bill of review.

The decree is, therefore, reversed, the demurrer sustained, and the bill dismissed.

A petition for a re-argument was filed, but overruled.