+By the Court :
Upon the state of facts, in this case, James Boyd, by virtue of the decree in chancery, in his favor, and under the provisions of *330 the act regulating proceedings in chancery, obtained an absolute legal title to the lands in dispute. Whilst invested with this title, he entered into the possession. The title conferred by the decree was exactly that which Taylor, the defendant in chancery, had, when the decree was rendered; and this title was as perfect, in James Boyd, under the decree, as it was in Taylo.r before the decree was pronounced. Boyd’s power to alien was as full and ample as any other owner’s could be, subject, however, to bo divested of the estate by the same power that invested it in him.
The foundation of this title was the decree in chancery that conferred it. So long as that decree remained in force, the title could not be impeached by Taylor, or any person claiming under him, by conveyance made, pending the suit in chancery, or alter the decree. But what is the effect of the reversal of that decree.
It is urged that the decree, having the same effect as a deed—being, in fact, an operative conveyance—its effect must be the same, as if a deed had actually been made under the decree. In which case, it is maintained that a reversal of the decree would not divest the title. Without deciding what would be the effect of a deed, in such a case, as between the parties to the suit themselves, we are fully prepared to say that as between the parties, a reversal of the decree, which confers the title, actually divests it, and reinvests it in the person where it rested before the decree was made.
When the decree of reversal is pronounced, the parties concerned are all before the court. The title vested by the decree is declared no longer to exist, and it would seem perfectly competent for the court at once to do justice between them. Why should the successful party he driven to a now bill to revest himself with the title? Sui’ely the great objects of justice are full as well attained by considering the reversal a revestment of title, and, in that respect, placing the parties as they stood before the original decree was pronounced. It *is the most expeditious, the cheapest, and therefore, as we think, the most proper remedy. If. the decree be reversed, and the bill dismissed, upon the opposite doctrine, the complainant thus turned out of court would nevertheless have obtained the whole object of his bill. And the defendant, after a final adjudication, in his favor, would have to prosecute a new bill to obtain relief against the effects of a decree in a suit decided in his favor. This would be a strange anomaly in judicial *331 proceedings, and one which ought not to be introduced, without some strong necessity.
Again, if, on the reversal, the court retain the cause, and on final hearing, a second time find the complainant entitled to a decree for the land, what form of decree is to be made? It can not be that the defendant convey, for the doctrine insisted upon assumes that he has no title in him. It must be a decree confirming a title in the defendant, which he obtained under the reversed decree. Upon what principle of reason, or enactment of legislation, would this kind of decree stand ?
But the most difficult and important point in this case, is as to the effect the reversal is to have upon the rights of third persons, legitimately and innocently acquired. After the time limited in the decree itself had transpired, and the decree became an absolute title, the party thus invested with title and in possession of the land, sold and conveyed it to a third person, who stands before the court as an innocent purchaser for a valuable consideration without notice. Can his rights be divested by a reversal of the decree upon which his title was originally founded? ¥e are of opinion that they can not be so divested.
When James Boyd conveyed to Abraham Boyd, he had a complete title, which it was competent for him to transmit by conveyance in the usual mode. In making this conveyance he divested himself of title, and invested it in Abraham Boyd, the defendant, who reposed himself upon the solemn and final decree of a court of competent jurisdiction, then in full force and of unquestionable validity. By this act of conveyance, made in good faith, James Boyd put an end to his power over the land. He could not resume his interest in it, without the consent of his grantee, and no decree subsequently made, in the suit, or in any new suit growing out of it against James Boyd, could affect an interest which he had not, in the subject. This consequence, upon the premises *here asssumed, seems to be conceded by the counsel for the plaintiff. But he argues that the conveyance can not be treated as one made in good faith, because, as he insists, it was made pendente lite. If this position be correct, the result contended for necessarily follows; for a conveyance of a subject in litigation, made pending the litigation, is universally treated as made in bad faith, and as universally held not to change the rights of any of the parties.
*332 It is argued that the writ of error was sued out, and bond given upon it, before the making of the conveyance, and that consequently the suit was pending. On the other hand, it is acknowledged that no citation had been served on the defendant in error, and there is no pretense that either the grantor or grantee knew that the writ of error was pending. We are of opinion that, until the service of the citation, a writ of error is not to be considered as pending so as to affect strangers as a lis pendens. This, we think, is not only in accordance with good sense and fair dealing, but is also according to the best authority.
It is contended that a writ of error is but the continuance of the original suit, and like a bill of revivor, oran appeal, reinstates the suit, and refers all parties and things involved, to its first commencement. We do not concede that such, in all cases, would be the consequences of a bill of revivor or of an appeal. But in this case, we think the analogy does not hold. In the obvious nature and character of the proceeding, a writ of error is a new and original suit. Original process issues in it, and must be served to bring the adverse party into court. The relative character of the parties is changed ; new pleadings are made up, and a final judgment upon it, though it may operate upon the original cause, is nevertheless a termination of the now suit or process in error. We do not meddle with the nice distinctions, by which a writ of error has been treated as a defensive proceeding, and a continuance of the cause in which the party alleged he had been prejudiced by an erroneous judgment. Though this proposition has been urged, arguendo, in the most respectable tribunal of our country, wo are not apprised of any case where it is made a ground of decision. We adhere to the doctrine that the writ of error is a new suit, and can only affect parties or strangers from the service of the citation. The judgment must, therefore, be.for the defendant.