# CHARLESTON

## DUNFEE v. CHILDS.

Submitted June 4, 1904.    Decided March 6, 1906.

1, EQUITY—*Bill of Review—Depositions.*
   Upon a bill of review for error of law depositions cannot be considered.  (p. 229.)

2. SAME—*Pendency of Appeal.*
   A bill of review for error of law cannot be maintained while an appeal is pending in the Supreme Court of Appeals.  (p. 230.)

3. APPEAL—*Dismissal—Time of Dismissal.*
   When an appeal is dismissed by an order of the Supreme Court of Appeals, it stands dismissed and ended on the actual date of such order, and does not continue to exist as an appeal to the end of the term of the Supreme Court of Appeals.  (p. 231.)

4. STAY OF PROCEEDINGS—*Discretion of Court—Pendency of Other Suit.*
   A stay of proceedings in a suit provided by section 6, chapter 136, Code, rests in the sound discretion of the court.  To warrant the stay it must be essential to justice, and it must be that the judgment of decree by the other court will have legal operation and effect in the suit in which the stay is asked, and settle the matter of controversy in it.  (p. 233.)

5. EQUITY—*Bill of Review—Newly Discovered Evidence.*
   A decree of the Supreme Court reversing, for error of law, a decree under which land is sold, is not newly discovered evidence for a bill of review to reverse a later decree of a circuit court dismissing a bill filed to set aside a deed made to the purchaser under such decree of sale by the former owner of the land after the sale and its confirmation.  (p. 235.)

6. SAME.
   The reversal by the supreme court is not newly discovered evidence or matter for a bill of review to reverse a decree of a circuit court made before such reversal.  (p. 236.)

7. DEEDS—*Cancellation.*
   Will a decree of the Supreme Court of Appeals reversing a decree of sale of land be alone ground for a bill to cancel a deed made to the purchaser under the decree by the debtor and owner of the land before reversal, when there is no other consideration for such deed than such decree of sale and purchase under it?  (p. 237.)

8. Vendor and Vendee—*Purchaser—Judicial Sale.*

Where a party to a suit interested in a decree for sale of a debtor's land by having a debt decreed him against the land is the purchaser under the decree of sale, and he then conveys the land, after confirmation of the sale and before a bill of review or appeal to reverse the decree of sale, to a *bona fide* purchaser for valuable consideration without notice actual of error in the decree, such purchaser's title is not affected by a reversal of the decree of sale on bill of review or appeal. (p. 238.)

9. Lis Pendens—*Bill of Review.*

A suit as a *lis pendens* ends with a final decree. A bill of review or appeal to reverse such decree is a new *lis pendens*, as regards purchasers claiming title under the decree, and is not a mere continuation of the original suit. (p. 239.)

10. Cancellation of Instruments—*Purchaser for Value.*

A decree of cancellation of a deed for land for fraud, or duress, or want of consideration, cannot be made against a purchaser for valuable consideration without notice of the facts tainting the deed with fraud, duress or want of consideration. (p. 248.)

11. Deeds—*Grounds of Invalidity—Fraud—Duress.*

A threat by one having good title to land and entitled to possession as purchaser under a decree of sale, as against the debtor occupying the land, to eject such occupant by process under the decree of confirmation of sale does not constitute fraud or duress to set aside a deed made by such occupant to said owner. (p. 249.)

12. Vendor and Vendee—*Bona Fide Purchaser.*

One claiming land under either a quit-claim deed or a deed with covenant of special warranty may make the defense of a purchaser for valuable consideration without notice. (p. 249.)

13. Deeds—*Form—Interest Conveyed.*

A deed of the form prescribed by section 1, chapter 72, Code, containing the words "do grant," though it contain a covenant of only special warranty, will pass the very land itself, and all estate, right, title and interest of the grantor therein. (p. 250.)

14. Deeds—*Setting Aside Deeds—Laches.*

To set aside a deed for fraud suit must be brought in a reasonable time, a time reasonable under circumstances of the particular case. Delay, especially where it affects third persons, will bar relief. (p. 259.)

Appeal from Circuit Court, Tyler County.

Suit by James R. Dunfee and others against H. Childs,

Jr., and others.    From a judgment for defendants, plaintiffs appeal.

*Affirmed.*

Van Winkle & Ambler and Dave D. Johnson, for appellants.

T. P. Jacobs, Pugh & Pugh, Roberts & Carter, M. F. Elliott, Erskine & Allison, and S. Bruce Hall, for appellees.

Brannon, Judge:

H. Childs & Co. brought a suit in equity in Tyler county to enforce judgment liens on land of Dunfee, and in it a decree was entered in August, 1891, to sell a tract of eighty-five acres of land of Dunfee for various debts, one of them to Hardman. Under this decree sale was made of said tract to Hardman, and the sale was confirmed in December, 1891. The decrees of sale and confirmation were by default. Dunfee filed a bill of review in April, 1894, but it was dismissed. On appeal to this Court the decree dismissing the bill of review was reversed for error of law, and the case was remanded to the circuit court. 45 W. Va. 155. The decree of reversal dates 6th May, 1898. In April, 1894, Dunfee and wife filed what is called a supplemental bill in the nature of a bill of review. In it the charge was made that Hardman chilled the bidding at the sale pretending to be buying the land with intent to let Dunfee redeem; and also that after his purchase Hardman, with knowledge that his title under the judicial sale was bad, went in company with a deputy sheriff, Hardman being at the time sheriff, to the residence of Dunfee on the land, and represented that Dunfee's wife had no contingent dower in the land, and that under his purchase he could at once turn them out of possession, and would do so, unless they would execute to him a special warranty deed to the land; but that if they would do so, he would let them remain on the land for the balance of the year 1892, from March; that under this representation, and supposing that their legal rights had been entirely taken away by the sale, and that Hardman knew what he stated to be true, in order to keep from being turned out of doors, they executed such deed to Hardman, dated 28th March, 1892. The deed recites a consideration of one hundred dollars paid and other valua-

ble consideration; but it seems that said $100.00 was not in fact paid. The bill alleges that there was no consideration but the promise not to execute the writ of possession, and allow Dunfee to remain in possession. A writ of possession had been awarded to Hardman by the court. On the date of the deed Dunfee took a lease of the land from Hardman. This bill alleged numerous errors of law in the decree of sale, and in this respect it was a bill of review, and in the other respect an original bill to cancel said deed for fraud, duress and want of consideration. For these causes this bill sought to reverse the decrees of sale and confirmation for error of law, and to set aside the sale, and also annul the deed from Dunfee and wife to Hardman. The bill states that Hardman had conveyed the land to McCoach, and McCoach had conveyed an interest therein to West, and they had leased the land for oil to Ludwig and Mooney, and they had assigned the lease to The Carter Oil Company. Under said lease large quantities of oil were produced. This bill of April, 1894, sought to charge those liable therefor with the oil royalty in favor of Dunfee. This bill set up the fact that there had been a bill of review, as above stated, to reverse the decree of sale for error of law, and that said bill of review had been dismissed by the circuit court, and that an appeal to this Court had been applied for, but did not say that such an appeal had been granted or was pending. The bill also averred that Dunfee and wife had then pending another bill of review in the circuit court to reverse the decree of sale, and asked that said bill of review be read with said supplemental bill. When the cause was called for hearing on said bill of April, 1894, Dunfee and wife moved the court to stay the hearing until an appeal, alleged in the motion to be pending in the Supreme Court, from a decree dismissing said bill of review filed to review the decree of sale should be determined; but the court refused to stay the case, and dismissed said supplemental bill in the nature of a bill of review. This decree was made in December, 1896. In May, 1899, Dunfee and others filed another bill, a bill of review, to reverse the decree of December, 1896, which dismissed said supplemental bill, and to set aside said deed to Hardman for fraud, duress and want of consideration. We may say this was for error of law. This bill also set up the fact that the

Supreme Court had reversed the decree of the circuit court dismissing the bill of review which had been filed to reverse the decree of sale and the sale under it.     This was set up to have the effect of newly discovered matter to reverse the decree of December, 1896, dismissing said supplemental bill. Dunfee had died, and this last bill of review was filed by his heirs.    On full defense this last bill of review was dismissed, by decree dating 10th of October, 1900.    From this decree the plaintiffs have appealed.

The printed record contains 410 pages besides the record on the former appeal, and the briefs 381 pages, and the case has been complicated by numerous elaborate pleadings.    It is to be noted that this appeal is only from the decree of October 10, 1900, dimissing the last bill of review.    The question is, Should that decree be reversed?    Instead of dismissing the bill of review of May, 1899, should the decree have been one reversing the decree of December, 1896, and cancelling the deed from Dunfee and wife to Hardman?    At once I remark that we cannot consider whether the court upon the bill of April, 1894, ought to have set aside the deed from Dunfee and wife to Hardman, for the reason that that matter turned on depositions, which cannot be considered upon a bill of review.    To reverse the decree of December, 1896, for that matter, there must have been an appeal from it bringing the evidence under review.    By the decree the court found that the evidence did not sustain the attack on the deed, and it could not reach this conclusion except by considering the evidence.    The depositions were voluminous and conflicting upon the questions of duress, want of consideration, misrepresentation and improper procurement of the deed.    Error of a court upon questions of fact under evidence is not reviewable on bill of review.    *Wethered* v. *Elliott*, 45 W. Va. 436; *Dunn* v. *Renick*, 40 *Id.* 349.

The last bill of review, that of May, 1899, assigns only two errors in the decree of December, 1896, one the failure to stay the case until decision of the Supreme Court: the other, "in dismissing the bill, because, upon the face of the decree as shown by the pleadings, the plaintiffs were entitled to the full relief prayed for."    This is very indefinite and general. What is its meaning?    The law requires definite assignment. This is hardly an assignment of error.    If it means, as I sup-

pose it was intended, that the court erred in not setting aside the deed for fraud, we cannot consider it, as that hinges on the evidence. Of course, the decrees of 1891, are not involved, as they have been reversed, or we will say so. The only question presented by the last bill as error of law in the decree of December, 1896, to be considered by us, is, whether there is error in refusing to stay the hearing of the bill of April, 1894. We cannot look into the affidavits as to the mere matter of continuance not touching the stay.

It is claimed that there is error in the decree of December, 1896, dismissing the bill of April, 1894, because the circuit court failed to stay the proceedings until the decision of the Supreme Court on appeal from the decree of sale of August, 1891. But there was nothing to show that, in fact, such an appeal was pending. It is enough to close this question, the only question of law involved, that the record does not present this error, as a bill of review for error of law can only be sustained by error on the face of the decree. The motion to stay the suit, it is true, did aver that there was pending in the Supreme Court an appeal; but no showing of that kind was made by affidavit, record or otherwise. And as against the adverse party this averment amounted to nothing. The answers of Childs & Co. and The Carter Oil Company denied the pendency of such appeal, and the bill does not allege its pendency, and no showing of it was made by the record, and the mere statements of the plaintiffs in their motion would not show the existence of an appeal, as it would not establish the fact of the appeal as against the other parties. So, there is no error in the refusal of a stay. On the contrary, instead of there being ground to stay the case, there was ground under this head to justify the dismissal of the bill, because by their motion to stay the plaintiffs admitted the pendency of an appeal in the Supreme Court for the same matter for which they had filed their bill of April, 1894, and thus admitted that they had already an appeal pending to reverse the decree of sale for error of law, and therefore could not have a bill of review in the circuit court for the same error of law. Instead of that being matter to stay the case, it was matter calling for the dismissal of their bill, so far as it is to be viewed as a bill of review—so far as the error of law was concerned. There cannot be a bill of review for error of law while

an appeal is pending from the same decree. *Maxwell* v. *Martin*, 35 W. Va. 384; *Kimberly* v. *Arms*, 40 Fed. R. 548; *Ensminger* v. *Powers*, 108 U.S. 292. The record of the appeal on the old bill of review shows that the appeal was not granted until months after the decree of December, 1896, namely, 30th April, 1897. A former appeal there was, but it was dismissed four days before that decree, and in fact there was no appeal pending when that decree was rendered. Orders appended to a brief of Dunfee's counsel so show as to the first appeal; but legally we cannot look into them, as they are not part of the record. Therefore, the fact remains that it does not appear that any appeal actually existed at the date of the decree of December, 1896. This is enough to justify action on, and dismissal of, the bill of April, 1894, so far as the matter of stay is concerned, that is, so far as the action of the court refusing such stay is imputed as error, and that is the only matter of error of law involved in the decree of December, 1896, dismissing the bill of April, 1894, since the old decrees of 1891 are out of the way.

As there was no appearance of record to show the actual pendency of an appeal, it is unnecessary, except in deference to the point made by counsel to advert to the point that though the first appeal was dismissed on the 12th day of December, 1896, by the Supreme Court, yet this Court did not close its term until 31st December, 1896, and that the order dismissing the first appeal did not thus become final until 31st December, and was not in force on the 16th of December. This point is not tenable. For some purposes judgments relate to the first day of a term, for instance, as a lien; but hardly ever to the last day for any purpose. It is true that during a term the record is in the breast of the court, and may be set aside; but generally the date of actual rendition is the date by which the judgment is to be tested as to its force and operation. *Long* v. *Perrine*, 44 W. Va. 243, (28 S. E. 701). On December 12, 1896, the order dismissing the first appeal took effect; on that date that order put that appeal out of court; its life was gone for all purposes, and it had no existence on the 16th of December. Even if the 31st of December, the close of the term, had anything in the world to do with the question, when the term closed on that date, it would retroact and make the order dismissing the ap-

peal have full effect, in a legal point of view, on the date when it was actually made, the 12th day of December, and enable us to assert that on the 16th of December there was no appeal pending. We decided in *Cresap* v. *Cresap* (46 S. E, 582), 54 W. Va. 581, that the date of a judgment or decree as shown by the record, marks the point of time from which the limitation of a writ of error or appeal runs—that is, the actual day of the term on which it was made.

Let us suppose, however, that there was pending on the 16th of December, 1896, an appeal. The stay of proceedings was not material as to the matters of law involved in that appeal, the matters affecting the decree of sale. The question whether that decree should be set aside was fixed by the record of the appeal. In case of reversal, such reversal would remove the decree of sale without any aid from a decree on the bill of April, 1894, reversing the decree of sale.

Can we regard such stay of proceedings material as to that matter of the bill of April, 1894, which sought the vacation of the deed from Dunfee and wife to Hardman, dating 28th March, 1892? I think not. If we should say that a stay had been granted, and that the Supreme Court had reversed the decree of sale, and that this fact had been brought into the case by amendment of the bill of April, 1894, would it demand a decree reversing the decree of sale (supposedly already reversed by the Supreme court) and annulling the deed from Dunfee and wife to Hardman? If we concede that such reversal would alone constitute ground for the annulment of that deed, if Hardman still owned the land, yet could it be annulled as against McCoach and West and Ludwig & Mooney and The Carter Oil Company? Could a reversal of that decree by the Supreme Court upon the appeal, or by the circuit court under the bill of April, 1894, treated as a bill of review, affect those purchasers for valuable consideration, though it would affect Hardman? Could a decree upon that bill of April, 1894, treated as an original bill, setting aside that deed, affect the said purchasers, though they held title derivatively from Hardman? I hold that they could not be affected in either aspect, for the reason that they are purchasers for valuable consideration without notice. Further on I will seek to give reasons based on authority for this position. In connection with the subject of stay I will add, since that stay constitutes the

shibboleth of the appellants to sustain the claim of error of law
in the decree of December 16th, 1896, which they would reverse
by the last bill of review, that counsel cites section 6, chap-
ter 136, Code, saying that "Whenever it shall be made to
appear to a circuit court, or to the judge thereof in vacation,
that a stay of proceedings in a case therein pending should be
had, until the decision of some other action, suit or proceed-
ing in the same or another court, such court or judge shall
make an order staying proceedings therein upon such terms as
may be prescribed by the order." This language vests a wide
discretion in the court, and though it is not an arbitrary dis-
cretion, yet it requires a strong showing of prejudice to a
party to reverse the action of a court for a refusal to make
such stay. Some courts have held that such refusal is not re-
viewable. *People* v. *North R. Co.*, 53 Barb. 98. We do not
see that such discretion was abused in this instance, even if
we could see that there was any materiality, for the purposes
of the case, under the bill of 1894, in the pendency of the
appeal, as there could not be, because that appeal itself, if
effectual, would operate on the decree of sale independently
of any action under the bill of April, 1894. The statute it-
self requires that it be made to appear that a stay ought to
be granted. It must appear that the stay was necessary to
the ends of justice. It was not necessary in this case, for
the reason that the appeal would decide on the error of law
in the decree of sale, and for the further reason stated above
that the rights of such purchasers could not be affected by a
reversal of the decree of sale, or by annulment of the deed
from Dunfee and wife to Hardman. Thus the stay would
have been useless in a legal point of view. The stay must be
on the ground that the action in the other case is material in
the decision of the case stayed. We find it stated in 1 Ency.
Pl. & Prac. 768, that "In order to authorize any court to
stay proceedings on account of a suit pending in another
court, the two proceedings must be practically identical."
The statute has not been construed by this Court, so far as I
know; but it must be very evident that it means to, first, vest
a discretion in the court, and, second, that it must appear that
the decision of the case in another court will have a material
or controlling effect, in actual legal operation, upon the suit
in which the stay is asked. The statute does not prescribe

the conditions calling for a stay, but any action under it must be governed by the common law principles relating to the subject. A suitor's suit cannot be suspended merely because a legal question may be common to the two suits. He has a right to demand that the court shall decide such question, and not wait for its decision by another court. The decision in the other suit must have legal effect in the suit in which the stay is asked, and close its litigation. If it operate on only one of two litigated matters, it ought not to be granted, because it does not cover the whole case.

Refusal of the stay is the only error of law imputed in the dismissal of the bill of 1894, specified in the bill of review of May 1899, and we have seen that this does not constitute a reason for reversing the decree of 16th December, 1896, dismissing the bill of April, 1894. I will add another reason why there is no error of law in such dismissal. The bill of April, 1894, states that Dunfee had then pending a bill of review to reverse the same decree of sale for the same error of law, and that it was yet pending. There could not be two bills of review for the same cause. This matter was pleaded in bar of the bill of April, 1894, and was cognizable on final hearing.

Thus we conclude that there is no error in the decree of October 10, 1900, upon the bill of May, 1889, based on error of law: First, because if there was pending an appeal from the decree of sale, that would prevent the court from reversing that decree under the bill of April, 1894; second, there was a bill of review yet pending in the circuit court to reverse the decree of sale; third, there was no evidence that an appeal was pending so as to show error in refusal of a stay before hearing the bill of April, 1894; fourth, because no reversal of the decree of sale or annulment of the deed of Dunfee and wife to Hardman could affect McCoach and other purchasers; fifth, if it had been assigned as error in refusing to reverse the decree of sale under the bill of May, 1899, the answer is that the Supreme Court had already done this. Though matter of error in the decree of sale, is incorporated in the bill of review of May, 1899, yet it is not assigned as error therein. So much for matter of law apparent.

But the bill of May, 1899, states that the Supreme Court

had reversed the decree of sale made in 1891, and claims that this should have induced the court to set aside the decree of December 16, 1896, on the ground of newly discovered evidence. The first reply to this is that this is not such new matter as calls for reversal on the last bill of review. All deffnitions of newly discovered evidence as a basis for a bill of review require that it shall relate to matters of fact existing at the date of the decree sought to be reversed by reason of such newly discovered evidence. But the decree of the Supreme Court reversing the decree of sale did not occur until long after the decree of 16th of December, 1896. No case is cited to sustain the proposition that this decree of reversal can be summoned as new matter to reverse a decree made before that reversal. A decision of the circuit court of the United States in New York, *Vetterlein* v. *Barker*, 45 Fed. R. 741, is the only case cited on the point. A decree in a collateral suit had been used in another suit as *res judicata*. That decree was later set aside as void for want of jurisdiction by the court which rendered it. This setting aside was presented as new matter in a bill of review. The court held that it could not be so used, because the decree had been set aside as void, but expressed the opinion that but for its being void it would be new matter for a bill of review. Likely so, because as *res judicata* it had been controlling and decisive; but in this case it is not so. I have already sought to show that a reversal of the decree of sale could not operate to call for a decree under the bill of April, 1894, reversing the decree of sale or annulling the deed of Dunfee and wife to Hardman, so as to affect said McCoach and other purchasers. Therefore, it is not such matter as would call for a different decree than that of the 16th of December, 1896, or of October 10th, 1900. Under neither the bill of April, 1894, nor of May, 1899, could any decree be rendered to the prejudice of McCoach and other purchasers. New matter, to be good for a bill of review, must be effectual to call for a different decree. *Machine Co.* v. *Dunbar*, 32 W. Va. 335; *Brown* v. *Nutter*, 54 W. Va. 82, (46 S. E. 375.) This is a second reason why that new matter is not effective to have called for a reversal of the decree of December 16, 1896, upon the bill of May, 1899. As to the claim that the decree of reversal of the sale decree is new matter good for a bill of review,

I will add that it would be needless to affect the decree of sale under the bill of May, 1899, because the reversal did that; and as to the refusal to vacate the deed from Dunfee and wife to Hardman, it could not reverse the decree of December, 1896, because the reversal occurred after that date. *Bledsoe* v. *Carr*, 10 Yerg. 55, holds that "The rendition of a decree in another court is not new matter within the meaning of the rule" that newly discovered matter is ground for a bill of review.

So, treating the bill of May, 1899, as a bill of review, we see no error in the decree of October 10, 1900, dismissing that bill. It is hardly necessary to say that we cannot look into the evidence bearing on the question whether the deed from Dunfee and wife to Hardman was procured by fraud or coercion, because upon a bill of review we cannot look into such evidence, as that can only be done upon an appeal.

But suppose we treat the last bill, that of May, 1899, as an original bill to set aside the deed from Dunfee and wife to Hardman on the strength alone of the reversal by the decree of the Supreme Court of the decree of sale. There is, or might be, an objection to so‧treating this bill, on the ground that it unites matter for a bill of review and matter for an original bill; in other words, it asks to set aside the decree of December 16th, 1896, for error of law and new matter, and to treat it as an original bill would make it operate as an original bill to affect said deed on the strength of the reversal of the sale decree. "A bill cannot be maintained which seeks in the alternative to review a decree for error apparent, or to impeach and set it aside on the ground of fraud." *Gordon* v. *Ross*, 63 Ala. 363. The opinion in *Kimberly* v. *Arms*, 40 Fed. R. 559, takes the same view. But as there was no demurrer to the bill of May, 1899, for multifariousness, let us waive this defect, though this Court might *sua sponte* raise that question itself, without demurrer, and dismiss the bill. *Dunn* v. *Dunn*, 26 Grat. 296; Hogg's Eq. Proced. section 137; *Oliver* v. *Pratt*, 3 How. 411; 14 Ency. Pl. & Prac. 211. Then, treating this bill as an original bill setting up the fact of the reversal of the decree of sale, did it call for a decree annulling the deed from Dunfee and wife to Hardman? If that deed rested

alone upon the decree of sale, it would seem to do so. If, however, other consideration in fact enter into that deed, as for instance, if Hardman, had in fact paid the one hundred dollars money consideration stated in the deed, the reversal of the sale decree plainly would not affect that deed, for the simple reason of that additional new consideration; but that one hundred dollars was not in fact paid. There is another element of consideration stated in the briefs as a support for said deed, namely, that Hardman allowed Dunfee and wife to remain on the land and retain their home upon it from March 28th, 1892, to the close of the year. It is said that at that time there was no appeal pending from the decree of sale, and no step had been taken against it, and that Hardman's purchase was in full force. That decree of sale was not void, but merely voidable, and while standing unreversed gave Hardman perfect title and right of possession, and his permitting Dunfee and wife to retain possession under a lease made by Hardman to them constituted good consideration; it constituted a valid consideration for the deed when it was made; as things then stood, this lease was valuable consideration, and thus, in technical law, made the deed unimpeachable. But afterwards the sale decree is reversed, and that avoided it *ab initio*, and it goes to show that Dunfee only remained on his own land, and this would seem to do away with the retention of possession by Dunfee under the lease from Hardman as a basis of consideration for the deed. There was thus no money consideration, and this lease came to be no consideration by the retroaction of the decree of reversal in the Supreme Court, and so there was no consideration in fact for that deed. The consideration upon which it once rested fell from under it. Though it is not necessary to explicitly so decide, I incline to think that this decree of reversal would annul the deed from Dunfee and wife to Hardman, if Hardman still owned the land. I have forgotten to say that it is argued with great force that there is other consideration of value to defend the deed against the effect of that reversal, and that is, that the money paid by Hardman under his purchase under the decree went to pay Dunfee's debts, and is the same as if paid to Dunfee; but the answer to this may be that upon reversal Hardman would be en-

titled to be repaid that money, and to charge it on the land, and thus lose nothing.

But, for argument, let us say that the reversal of the decree of sale would, of its own force, as a new fact, an independent fact, call for the cancellation of the deed from Dunfees to Hardman. We do not feel called upon to say decisively whether or no such would be the case, treating the last bill as an original bill, as we would have to say if Hardman yet owned the land, or a royalty issuing from it, because he conveyed the land *outright* to McCoach, by deed dated 2d February, 1893, under an executory contract of sale dating 2d April, 1892, and McCoach conveyed an interest to West, and McCoach and West, on 18th April, 1892, leased the land for oil purposes to Ludwig and Mooney, and they entered and developed oil upon it. These transfers were made after the decrees of sale and confirmation, and after the conveyance of the land to Hardman under his purchase under the decree of sale, and before any bill of review had been filed, or any move made against the decree of sale. · Could a reversal of those decrees by the Supreme Court under the appeal from a decree made upon the bill of review dismissing it, or by a reversal of said decrees as asked by the bill of review of April, 1894, affect McCoach or those claiming under him ? Such reversals could not do so, because McCoach was a complete purchaser for valuable consideration without notice. Did McCoach have notice? Notice of what? When he purchased there was a final decree and no bill of review. Surely he was not bound to notice the single technical error which alone caused the reversal later of the decree of sale, that is, the failure of the record to show that the land would not by rents in five years pay the debts. This defect did not render the decree void, but only erroneous and voidable. *Waldron* v. *Harvey*, 54 W. Va. 610. This fact is material, for if the decree were void, it would be different, as if there were no jurisdiction of the subject matter or parties. If void, the decree would be *nil* and would confer no title on the purchaser. *Hoback* v. *Miller*, 44 W. Va. 635. And the purchaser having no title, could not confer it; but Hardman had title perfectly valid while the decree stood unreversed, and McCoach had right to think that as the court had decreed a sale, that sale would confer good title.

The argument is made that McCoach was a *pendente lite* purchaser. How can this be so? The case in which the sale was made had been ended by final decree. A man cannot be such a purchaser after final decree. "During the interval between final judgment and commencement of proceedings in error, there is no suit pending, and a purchaser in good faith does not take title *pendente lite*, and is not affected by subsequent reversals of the judgment." *Cheever* v. *Minton*, 13 Am. St. R. 258. In that case the court held the writ of error a new suit. We cannot say that the original suit in which the decree of sale was made and the bill of review and the appeal upon it make one and the same continuous suit, and thus find that though McCoach purchased from Hardman after final decree and before bill of review or appeal, he was a *pendente lite* purchaser; for such bill of review and appeal are new suits, not a continuation of the same suit for the present purpose. We can safely say with Judges Lee and ENGLISH in *Claytor* v. *Anthony*, 15 Grat. page 526, and *Keck* v. *Allender*, 37 W. Va. 210, that "a bill of review forms no part of the proceedings in the original cause." "It is a new suit," said Judge Cabell in *Laidley* v. *Merrifield*, 7 Leigh 353. This is because the old suit has ended by final decree. The Virginia court of appeals in a very late case held good the title of a purchaser from a party to the suit made between the decree and filing of a bill of review or petition for rehearing. *Va. Iron Co.* v. *Roberts*, 103 Va. 661. A bill of review or appeal is a second *lis pendens*, and must have its own notice. It does not relate back to the rendition of the judgment or decree. 2 Cyc. 510; Bennett on Lis Pendens §§ 40, 70; *Woolridge* v. *Boyd*, 13 Lea 151; 21 Am. & Eng. Ency. L. (2d Ed.) 618; *Scudder* v. *Sargent*, 17 N. W. 369; *Hollister* v. *Mann*, 58 N. W. 1128; *Taylor* v. *Boyd*, 3 Ohio 337 (17 Am. Dec. 603); *Lee County* v. *Rogers*, 7 Wall 181; *Warren County* v. *Marcy*, 97 U. S. 96; *Ludlow* v. *Kidd*, 3 Ohio 541; Barton's Chancery Prac. 331; *Cole* v. *Miller*, 32 Miss. 89; *Bank* v. *Jenkins*, 104 Ill. 143; *Macklin* v. *Allenberg*, 100 Mo. 343. In *Rector* v. *Fitzgerald*, 59 Fed. R. 808, the Circuit Court of Appeals held that where a final decree dismissed a suit filed by Rector, which dismissal was in 1881, and in 1884 Fitzgerald took a mortgage on the land involved from the grantee of the defendant who had prevailed in the suit,

and afterwards Rector filed a bill of review against Fitgerald and his grantor to reverse the decree dismissing the bill for error appearing on the record, Fitzgerald was a purchaser in good faith, and that after the term at which a final decree in favor of his grantor had been rendered, his title could not be affected by a decree subsequently rendered on a bill of review subsequently filed. It also held "that a bill of review will not be regarded as a continuation of the original suit so as to affect with notice a person purchasing the property in controversy in good faith from the successful party after a final decree and without notice that a bill of review is to be filed." In *Rector* v. *Fitzgerald*, 59 Fed. R. 808, the Circuit Court of Appeals reviewed the cases and from them concluded: "We are of opinion, on principle and authority, that a bill of review ought not to be regarded as a continuation of the original suit, merely for the purpose of affecting a purchaser in good faith after final decree with notice. In our judgment one who purchases after the term at which a final decree is rendered, without notice that a bill of review is contemplated or will be exhibited, should be protected from the effect of a decree on such a bill, if subsequently filed."

I ask if it can possibly be law that one who buys or recovers land under decree must wait three years for a bill of review, or two years for an appeal, or five years for a motion to reverse, before he can sell to a *bona fide* purchaser and give him good title? Is it the policy of the law to thus tie up land? The decree is presumed to be right until reversed. May not the victor in the suit or the purchaser act upon this presumption. "The successful party ought not to have his title clouded and the value of his property correspondingly diminished for three years by two doubtful contingencies: 1. That a writ of error will be sued out; and 2. That a reversal will take place." *Cheever* v. *Minton*, 13 Am. St. R. 258. So says *Bank* v. *Bank*, 6 Peters, p. 17.

The case of *Lynch* v. *Andrews*, 25 W. Va. 751, cannot be used to show that the purchasers were *pendente lite* from Hardman. It is not authority in this case, because the decrees were not final, I mean the decrees of sale and confirmation, as there was a reservation of right to make final adjudication. From the case of *Camden* v. *Haymond*, 9 W. Va. 680,

and 22 W. Va. pp. 184, 188, it will appear that the decrees involved in *Andrews* v. *Lynch* were pointedly held to be interlocutory. That matter was *res judicata* when the case of *Andrews* v. *Lynch* was decided, and was so treated in its decison. The decrees being interlocutory, not final, the purchaser was regarded as a purchaser *pendente lite;* but in this case there was no reservation as there was in those decrees. The decrees in this case were final in every sense, and the purchasers from Hardman were not *pendente lite* purchasers. Again, the decrees against Andrews were void for want of service or appearance.

In volume 9, page 1, of that excellent equity work, American and English Decisions in Equity, will be found valuable authority to support this holding. It reports the West Virginia case of *Ohio River Co.* v. *Fisher*, Circuit Court of Appeals, 115 Fed. 929. This case protected *bona fide* purchasers purchasing between the decree and a filing of a bill of review. The Circuit Court of Appeals affirms the rule put in the case of *Rector* v. *Fitzgerald* holding that a bill of review is not a continuance of the old suit, but a new one and that a third person *bona fide* purchasing under a decree afterwards reversed is not affected by the reversal. "Subsequent reversal of a decree of chancery does not affect the title of a *bona fide* purchaser who has acquired under such decree before suit in error to reverse it was commenced." *McCormick* v. *McClure*, (Ind.) 39 Am. Dec. 441. This case says that one may purchase before appeal with safety. The opinion says that the appeal is a new suit.

Pomeroy Eq. sec. 632 (3rd Ed.) says that if the unsuccessful party is entitled to appeal, he must do so in a reasonable time to keep the *lis pendens* alive. Even under this rule the *lis pendens* had ceased, as the bill of review was not filed for thirty-two months after the decree.

So there was no proceeding pending when McCoach got his deed to make him a *pendente lite* purchaser.

The bill of April, 1894, alleges that Hardman was guilty of wrongful conduct in chilling the bidding at the court sale, so as to keep down the price, and that he purchased with intent that Dunfee should redeem. If we had before us an appeal from the decree on that bill, we could examine the evidence to see whether this charge is true, and whether Mc-

Coach knew of it; for if he did not, of what avail is it, though true? If that evidence were before us, and would show the charge to be true as to both, then we could determine whether in fact Hardman bought on a trust which would be based on sufficient consideration and would be valid and enforceable in equity, though only oral. But we have before us an appeal from a decree of October 10th, 1900, dismissing the bill of April, 1894, to see whether there is error of law in such dismissal; in other words, we have before us a bill of review, and we. cannot look into the evidence to prove notice on McCoach or that Hardman was guilty of any such conduct at the sale. We cannot look into the depositional evidence to convict Hardman of · fraud upon a bill of review. *Dunn* v. *Renick*, 40 W. Va. 349; *Wethered* v. *Elloitt*, 45 *Id.* 436. So, we must regard McCoach and those claiming under him in the light of purchasers for valuable consideration without notice, and then inquire whether by law they can be affected by a reversal of the decree of sale. We do not deny the rule given in *Bank* v. *Bank*, 6 Pet. 8, and stated in the books *passim*, namely: "On the reversal of a judgment, the law raises the obligation in the party to the record who has received the benefit of the erroneous judgment, to make restitution to the other party for what he has lost." *Fleming* v. *Riddick*, 5 Grat. 272; *Keck* v. *Allender*, 42 W. Va. 420. But that does not apply to this case. In the case just mentioned, *Bank* v. *Bank*, after saying that on reversal, the losing party must be restored to what he lost by the judgment, the court further said: ·"But as it respects third persons, whatever has been done under the judgment, while in force, is· valid and binding. A contrary rule would be extremely inconvenient, and in great measure tie up proceedings under a judgment during the whole time within which a writ of error may be brought. If a bare intention or declaration of intention to bring a writ of error will invalidate what is afterwards done, should the judgment at any future day be reversed, it would virtually, in many cases, amount to a stay of proceedings on judgments." *Lovett* v. *German*, 12 Barb. 83. The general rule is well established that a reversal of a decree does not affect purchasers for value without notice. Hogg's Eq. Princ. section 293; 3 Cyc. 462, 467; *Zollman* v. *Moore*, 21 Grat. 313; *Gould* v. *Sternberg*, ·  ·

15 Am. St. 138; *Reynolds* v. *Harris*, 76 Am. Dec. 459. The authorities are very numerous, and almost of one voice, to show that a stranger to a case purchasing land under a decree, though it be erroneous, is not affected by its reversal, nor is a purchaser from him. *Hughes* v. *Hamilton*, 19 W.Va. 366, (point 15). This is now statute. Code, chapter 132, section 8. See *Machlin* v. *Allenberg*, 100 Mo. p. 342. But the authorities, by great preponderance, hold that when the purchaser is a party to the cause in which the sale is made, and has a substantial interest in the debt or cause for which the land is sold, his title perishes with the reversal of the decree. *Dunfee* v. *Childs*, 45 W. Va. 155; *Klapneck & White* v. *Keltz*, 50 W. Va. 331; *Frederick* v. *Cox*, 47 *Id.* 14. In this case, however, the purchase, was not by a stranger, but by Hardman, who filed a petition in the suit in which numerous debts, among them a considerable sum to him, were decreed against the land, and thus he was a party interested in the decree; but he having conveyed to McCoach, we meet the question whether McCoach is to be regarded a purchaser for valuable consideration and protected from loss of title by reversal of the decree of sale. Authorities above cited answer that he is protected. As the title of a stranger to the cause purchasing under a decree does not fall with reversal, why should the title of one purchasing from a party not be likewise protected? Both are strangers to the cause, both alike innocent, and it would seem that like principles would apply to both. I think the statement of law made in *Dunfee* v. *Childs*, 45 W. Va. 155, after stating that the title of a party falls with reversal, that "there is an exception where the sale is to a stranger *bona fide*, or where a third person has *bona fide* acquired some collateral right before reversal," is borne out by the authorities there cited and many others. In denial of this position reliance in some cases has been placed on the maxim *Nemo potest plus juris in alienum tranferre quam ipse habet* (No one can transfer to another more right than he himself has); but this does not apply to such purchaser. "The purchaser must be regarded as a purchaser without notice, since he buys from a party who derives title from a judgment and execution valid at the time, and really occupies the same position as if he had himself bought at the sheriff's sale. Whilst, therefore, the

title of the plaintiff would be annulled by the reversal of the judgment, the sale or conveyance to a third person before reversal of the judgment, would be valid, and the purchaser, supposing the purchase to be in good faith, would be protected from the risks which his vendor would be subject to." *Vogler* v. *Montgomery*, 54 Mo. 577; *Waddham* v. *Gay*, 73 Ill. 415. Where title is vested in one by decree, and he conveys to another *bona fide*, title in him is not affected by the reversal. *Hanna* v. *Hanna*, 110 Ill. 53. Many cases hold that a stranger purchasing of a party who purchased under a decree is not affected by reversal. Notes to *McGilton* v. *Love*, 54 Am. Dec. 455, and *Little* v. *Munce*, 28 *Id.* 371; *Lovett* v. *German Church*, 12 Barb. 67, (28 Am. Dec. 371), note; Rorer on Judicial Sales (2d Ed.) section 1142; *Dater* v. *Troy Co.*, 2 Hill 529; *Davis* v. *Watson*, 54 Miss. 679; *Evans* v. *Kahr*, 60 Kan. 719; *Guiceau* v. *Wisely*, 47 Ill. 433. "When, after entry of a decree quieting title to real estate in a party to the suit, he conveys to a *bona fide* purchaser, no appeal bond having been filed, a subsequent reversal of such decree upon appeal will not affect the purchaser." *Parker* v. *Courtnay*, 26 Am. St. R. 360. "The party thus invested (by decree) with title and possession sold and conveyed to a third person who stands before the court as an innocent purchaser for valuable consideration, without notice. Can his rights be divested by a reversal of the decree on which his title was originally founded? We are of opinion that he cannot be so divested." So says the opinion in *Taylor* v. *Boyd*, 3 Ohio 337, (17 Am. Dec. 603), a well considered case. In that case the syllabus reads thus: "Reversal of a decree under which a purchaser in good faith, before a service of citation in error, acquired title, does not divest the title of such purchaser." In that case Boyd sued Taylor to get a deed for land, and obtained a decree for a deed. Taylor brought a writ of error. Later Boyd conveyed to another Boyd, after writ of error, but before citation in it. Boyd's title was held good against reversal. It was contended that the purchaser Boyd was a purchaser *pendente lite;* but it was held that the writ of error was a new suit and that he was not a *pendente lite* purchaser. In *McCormick* v. *McClum*, 6 Blackford 474, (39 Am. Dec. 441), McCormick filed a bill to recover land and obtained a

decree and took possession. The decree was reversed. On motion for a writ of restitution it appeared that McCormick had conveyed to Justice after decree and before appeal, and it was held that the suit was not pending, and that the *bona fide* purchaser took valid title. In *McAusland* v. *Punt*, 93 Am. Dec. it is held that "Grantee of a judgment creditor, who purchases the debtor's land at a sale under a judgment, acquires good title, notwithstanding the judgment is afterwards reversed." It is there held that the maxim, "No man can transfer a greater right than he himself possesses," is subject to many exceptions. The court said that it was not denied that if a third party had purchased, his title would be good, thus saying that one purchasing from a party who had purchased was governed by the same principles. There are some contrary decisions. See Freeman on Executions, section 347; *Singley* v. *Warren*, 63 Am. St. 896. But which is the more sound rule, which the more conforms to sound public policy, that is, the policy that judgments and decrees rendered by the courts of the country in cases of lawful jurisdiction shall have some efficacy, and inspire some confidence, so that persons not parties to the suit may buy upon the faith of those judgments and decrees with some reliance and confidence? The Constitution and statutes make the courts the arbiters of man's property controversies, and when those courts have decided a property controversy and subjected property to sale and transfer, why should not the business world act under them with reliance and safety? Great importance is attached by the appellants to the Kentucky case of *Clark* v. *Farrow*, 52 Am. Dec. 552, containing the syllabus reading thus: "Purchaser of property in litigation after final decree is a purchaser *pendente lite*; he is not a necessary party to a bill of review, but is bound by the decision upon any bill of review or writ of error." "Purchaser at a sale under final decree generally takes a good title, though the decree be afterwards reversed." This syllabus in holding a purchaser after final decree, if it means either before or after a bill of review or appeal, or rather, if it means a purchaser after final decree and before bill of review or appeal, is surely too broad. Authorities cited above show this. That case, however, differs widely from the case we have in hand. In that case Farrow sued for the specific performance by Clark's

heirs of a contract for the sale of a lot; and obtained a decree and a conveyance of the lot to him, and afterwards conveyed the lot to Wright. Still later the decree was reversed and the contract was rescinded. As applied to the case of specific performance, or a suit to get title, the doctrine of that Kentucky case may be right. We are not called upon to say as to this; but I call attention to the fact that it is in direct antagonism to *Taylor* v. *Boyd* and *McCormick* v. *McClum*, above cited. But the Kentucky case sustains the proposition made by this opinion, that where the case is one, not of specific performance, or one of like kind, but a case of sale for debt under decree, one buying from a purchaser under decree, though such purchaser be a party interested, takes good title unaffected by reversal. In that case the court drew this distinction pointedly in the syllabus based on the following language of the opinion: "And we barely remark, in addition, that a title passed by a commissioner's deed under a decree for specific performance and other similar cases, stands upon different ground from that of a title derived under a decree of sale, and an actual sale; because, in the former case, the conveyance of title rests wholly on the decree, and is the same as if it existed in the decree alone, there being no meritorious act done under the authority of the decree which might give additional efficacy to the conveyance. But in other cases, as of a sale under a decree, the purchase is of itself a meritorious act, authorized by the decree and creating an equity; and it is a matter of interest to all parties, and to the public, that such sales, if fairly made, should be sustained, and they are sustained, though such decree be afterwards reversed. They are sustained, too, though the purchaser be the successful party to the suit, because he does not get the land by the direct operation of the decree itself; but by proceedings which it authorizes; and for this reason he is not compelled, upon a reversal, to restore the land, but to restore the price or money which it brought, and which alone he gets by the direct operation of the decree; on these, and perhaps other grounds, may be placed the distinction which has been uniformly held between the effect of reversal of decrees for sale, or under which sales have properly taken place, and decrees for conveyance of title where that is the object of the suit, and the very thing decreed." That Kentucky case strongly supports

the cause of the appellees in this case, and is strongly against the appellants. So, we conclude that the reversal of the decree of sale cannot affect the title of McCoach and those claiming under him, though under our law it would affect Hardman, if he yet owned the land.

Next we consider the demand of the bill of April, 1894, to set aside the deed of March 28, 1892, from Dunfee and wife to Hardman. The Court could not set aside that deed to the prejudice of McCoach, because he was purchaser for valuable consideration without notice of the misrepresentation, coercion, or want or failure of consideration on which the attack upon that deed was predicated. We find in 2 Story Eq. Juris. § 1503, the following basic principle applicable as well to the demand to set aside said deed as to the claim that the reversal of the decree of sale destroyed the title of McCoach and those claiming under him : "In short, courts of equity will not take the least step imaginable against an innocent purchaser in such a predicament; and will, on the other hand, allow him to take every advantage, which the law gives him; for there is nothing which can attach itself upon his conscience in such a case in favor of an adverse claim." Remember we are in a court of equity, which never lifts its hand by affirmative action hurtful to a purchaser *bona fide* for valuable consideration. Reflect that McCoach, under judicial sale and under the deed from Dunfee and wife, obtained legal title, and would thus prevail in a court of law, and equity will not make his condition worse by depriving him of legal title which gives him advantage in a court of law; for as Judge Moncure said in *Burwell* v. *Fauber*, 21 Grat. p. 463, "Certainly a *bona fide* purchaser for value, and without notice, is a great favorite of a court of equity, and that court will not disarm such a purchaser of a legal advantage." We find it stated in *National Valley Bank* v. *Harman*, 75 Va. p. 609, that Lord Rosslyn said what is approved by the Virginia court and held everywhere as equity law: "I think it has been decided, that against a purchaser for valuable consideration without notice, this court will not take the least step imaginable. You cannot even have a bill to perpetuate testimony against him. I am pretty sure it is determined that no advantage the law gives him will be taken from him by this court. The doctrine as to the jurisdiction of this court is

this: You cannot attach upon the conscience of the party any demand whatever where he stands as a purchaser, having paid his money and denies all notice of the circumstances set up in the bill." The Virginia court said that this doctrine had been repeatedly sanctioned by that court and the Supreme Court of the United States, citing *Boone* v. *Chiles*, 10 Pet. 177, 211; *Carter* v. *Allen*, 21 Grat. 241, 247; *Tompkins* v. *Powell*, 6 Leigh 576. See *Lough* v. *Michael*, 37 W. Va. 679; *Turk* v. *Skiles*, 45 W. Va. 82. Rescission of a deed for fraud cannot hurt a *bona fide* purchaser. 14 Am. & Eng. Ency. L. (2 Ed.) 163. "The relief of cancellation will not be granted against a *bona fide* purchaser for value without notice of the fraud or other ground for cancellation." 6 Cyc. 319; *Carter* v. *Allen*, 21 Grat. 241. In that case the court holds thus: "A purchaser for value without notice, actual or constructive, having obtained a conveyance will not be affected by a latent equity, whether by lien, or incumbrance, or trust, or fraud, or any other claim." "From a purchaser for value without notice this court takes nothing away which the purchaser has honestly acquired." 1 Am. & Eng. Dec. in Eq. p. 249 and 110.

There is another decisive view against the appellants. The bill of April, 1894, charges that Hardman knew of the error infecting the sale decree. He was not bound in law to notice it, and actual notice of it ought to be proven. The bill charges that Hardman at the sale bought under the pretense of allowing a redemption by the Dunfees, and that he employed coercion by threatening to eject Dunfee from the land, unless he would make the deed of March 28, 1892, and that he represented that he had the right to do so, and that Mrs. Dunfee had no contingent right of dower, and that the one hundred dollars stated as the consideration for the deed was not paid, and that McCoach and West had notice of all these things. Whether these charges are true or not depends wholly on evidence contained in depositions, and under authorities above cited, as we are deciding upon a bill of review, we cannot read those depositions to sustain these charges against Hardman and McCoach, as we could do upon an appeal from the decree of 16th December, 1896. Therefore, those charges are impotent in this case to fix fraud or misconduct on Hardman or knowledge or notice on McCoach. We have no read-

able evidence to sustain those charges. If Hardman made such statements they constitute no fraud, no duress or coercion. He owned the land under a confirmed sale giving him, at that time, perfect title, and he was entitled to possession, and could lawfully have enforced it by the writ of possession which had been awarded by the court.. And as Mrs. Dunfee had joined in a deed of trust for one of the debts decreed against the land, she had no dower in the land itself; but as some persons had told her that she had, and as she set up such claim, which would frighten oil men from buying, or leasing, Hardman naturally desired to close that trouble by her deed. As she had nothing in the land, he might fairly ask the deed, and as to her the lease would be a consideration, and by the deed he took nothing from her legally belonging to her. There was neither fraud nor duress nor coercion in this, to affect the deed, as shown by cases cited in *Whittaker* v. *Southwest Improv. Co.*, 34 W. Va. 217, 226.

But it is contended that McCoach cannot occupy the position of a *bona fide* purchaser, because he holds the land under a special warranty deed. Seeing that a special warranty deed would give McCoach the cast and character of a *bona fide* purchaser, counsel frequently call this deed a quit-claim deed, and rely on some cases holding that a purchaser under a quit-claim deed cannot make the defense of a *bona fide* purchaser, but that position is not sound law. "The receipt of a quit-claim deed does not of itself prevent a party from becoming a *bona fide* holder; and the doctrine expressed in many cases that the grantee in such a deed cannot be treated as a *bona fide* purchaser does not rest upon any sound principle. It is asserted upon the assumption that the form of the instrument, that the grantor merely releases to the grantee his claim, whatever it may be, without warranty of its value, or only passes whatever interest he may have at the time, indicates that there may be other and outstanding claims or interests, which may possibly affect the title, and, therefore, it is said that the grantee, in accepting a conveyance of that kind, cannot be a *bona fide* purchaser and entitled to protection as such, and that he is in fact thus notified by his grantor that there may be some defect in his title, and he must take it at his risk. This assumption we do not think justified by the language of such deeds or of the gen-

eral opinion of conveyancers." *Moelle* v. *Sherwood*, 148 U. S. 21. The same doctrine is held in *U. S.* v. *Land Co.*, 148 U. S. 31, and *Brown* v. *Jackson*, 3 Wheat. 451, as shown in the opinion filed by me in *Ellison* v. *Torpin*, 44 W. Va. p. 435. The Supreme Court of the United States, as there stated, has changed its ruling as to this, and has come to the conclusion that a purchaser under a quit-claim deed may be a *bona fide* purchaser. I refer to the authorities there cited for the proposition. But this is not a quit-claim deed. It is a statutory deed prescribed by chapter 72, section 1 of the Code, with a covenant of special warranty, and in its granting clause contains the words, "do grant unto the said party of the second part, with special warranty, all that certain lot, tract or parcel of land." By the very letter of section 2, "Every such deed, conveying lands, shall, unless an exception be made therein, be construed to include all the estate, right, title and interest whatever, both at law and in equity, of the grantor in or to such lands." This surely passes the very land itself, under that statute, whether the deed be one of special or general warranty. *Turk* v. *Skiles*, 45 W. Va. 82. The operative words "do grant" are the same prescribed by the statute for both a special and general warranty deed, and plainly operate alike in their granting or transferring effect, the only difference being, not in the force of the instrument to pass title, but in the obligation and effect of the warranty. Hence the character of the deed does not deprive McCoach of the benefit of the position of a purchaser for valuable consideration.

I have said that we cannot read the depositions for decision, and therefore we need not state their contents; but as bearing on the substantial justice of this case I will say that the depositions fall far short of sustaining the charges of fraud, coercion and misrepresentation against Hardman, and proving notice thereof on the part of McCoach. Even if Hardman were culpable in the manner of his procurement of the deed; there is no evidence to show that McCoach and those claiming under him had notice of it. Therefore, McCoach would be protected against this charge of fraud in the procurement of the deed. The law above given touching the protection of an innocent purchaser against loss of title by the reversal of a decree fully applies to protect McCoach

against the demand for cancellation of the deed. Look at the reasonableness of his position.   He saw the fact that Hardman had purchased at an open judicial sale, and he also saw the deed of Dunfee and wife to Hardman, and further that Dunfee had recognized Hardman's title, by leasing 28th March, 1892, the land from Hardman.   Had not McCoach the right to act on this with honest confidence?   And this confidence was inspired by the fact that Dunfees had made the deed and taken the lease.   Their plain acts thus led Mc-Coach to buy, and where one of two innocent parties must suffer loss, that loss must be borne by that one "who by his conduct, acts or admissions has rendered the injury possible." *Norfolk & Western Railroad Co.* v. *Perdue*, 40 W. Va. 442: *McConnell* v. *Rowland*, 48 *Id.* 276; *Roberts* v. *Tavenner*, 48 *Id.* 632; *Somes* v. *Brewer*, 13 Am. D. 406.

It is charged that Hardman, when he got the deed, knew there was error in the decree of sale that would invalidate the sale.   Will the law say that he was bound to be a jurist, seer and prophet and anticipate the effect of the single technical error affecting the deed, for the purpose of fixing actual fraud in his mind?   I know that for some purposes a purchaser is bound to know defects in his chain of title; he is bound to know the contents of a record under which he claims for certain purposes and to a certain extent, as; for instance, if he buys under a decree, he must see that the court has jurisdiction of the subject matter and the parties; but is it possible that he is bound to know in advance the effect of every error and irregularity for which the decree may be in the end reversed, when such error does not affect the authority and jurisdiction of the court?   But even say that Hardman and McCoach were bound to see this defect in the decree; say that you can use this for the purpose of fixing intentional fraud in the mind of Hardman, then I ask why did Dunfee allow Hardman to avail himself of that fraud by making a deed?   Did not Dunfee have the same means to know of that defect in the decree as Hardman had?   Was not the same avenue of information open to Dunfee as to Hardman?   If Hardman took the deed with knowledge of that error, so did Dunfee make the deed with like knowledge.

It is charged that negotiation was commenced by McCoach to purchase of Hardman before Hardman got the deed from

Dunfee, and that this is evidence of notice on the part of McCoach. The evidence is clear and preponderating that McCoach did not begin such negotiation before the execution of the deed; but what if he had done so? He had a right to do so. Hardman was vested with title by a confirmed judicial sale, and why had not McCoach a right to buy under that? How would that show either that he knew of any defect in the decree, or had any fore-knowledge of the execution of that deed?

And another point is this. If there was anything wrong in the procurement of that deed, why did not Dunfee attack it sooner after March 28, 1892, than April, 1894? He having knowledge of every circumstance connected with the execution of his deed, the law demanded quick attack, especially when he and his wife, living on the land, saw the oil operators spending thousands of dollars in their uncertain enterprise of development. He waited too long to invoke the power of equity to overthrow rights in those people. The many cases cited in *Whittaker* v. *Southwest Improv. Co.*, 34 W. Va. 217, will establish this. "To set aside a sale for fraud and conspiracy, suit must be brought within a reasonable time after the discovery of such fraud." *Williams* v. *Maxwell*, 45 W. Va. 297. As oil operations were going on before Dunfee's eyes, and as he knew that those engaged in them were resting on his deed, equity would require, in this particular case, prompt and speedy attack. And I will mention as pertinent here the fact that on the 2nd of January, 1893, McCoach having before that purchased the land by executory contract of Hardman, Mrs. Dunfee leased the house on it from McCoach, and thus inspired confidence in the title of the operators.

The law of estoppel plays an active part in this case also. Dunfee and wife made that deed to Hardman, and they took those leases from Hardman and McCoach, thus admitting title in Hardman and McCoach, and they rested quiet and silent upon that land seeing money expended in oil operations, knowing that Hardman relied upon the judicial purchase, the deed and his lease to Dunfee, and knowing that the oil operators relied upon them, and went on with their expenditures, and they made no protest. These facts not only call for speedy notice of dissatisfaction to those interested, and

speedy suit, but it operates as an estoppel and bar in equity against any relief.   "If a person knowing his rights, stands by and encourages or permits an innocent party to purchase his property or make valuable improvements upon it, without making known his rights, he is estopped from making any claim to it."   *Heavener* v. *Godfrey*, 3 W. Va. 426. See *Bates* v. *Swiger*, 40 W. Va. 741; *Norfolk & Western Railroad Co.* v. *Perdue*, 40 W. Va. 442; *Williamson* v. *Jones*, 39 W. Va. 231.

I need hardly say that some evidence was given to show that after the delivery of the deed of Dunfees to Hardman, Hardman said that if he could sell the land for oil for enough to pay his debt due from Dunfee, he would give Dunfee the surface.   This is not in the bill.   It was after delivery of the deed, and cannot affect that.   If such agreement were made, it was voluntary, based on no consideration, merely oral and not enforceable.   In no view does it play any part in this case.   Decree affirmed.

*Affirmed.*